EDWARD H. KUBO, JR.  (2499)
United States Attorney
District of Hawaii
LAWRENCE L. TONG (3040)
DERRICK K. WATSON (Cal. Bar No. 154427)
Assistant United States Attorneys
District of Hawaii
RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division
ANDREW A. SMITH (NM Bar #8341)
Trial Attorney
United States Department of Justice
Environment and Natural Resources Division
c/o U.S. Attorneys Office
P.O. Box 607
Albuquerque, New Mexico 87103
Telephone:  (505) 224-1468
Facsimile:  (505) 346-7205
E-mail:  andrew.smith@usdoj.gov

Attorneys for Defendants U.S. DEPARTMENT OF ENERGY
and NATIONAL SCIENCE FOUNDATION

UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| LUIS SANCHO, WALTER L. WAGNER, | Civil No. 08-00136-HG-KSC |
| Plaintiffs, | **FEDERAL DEFENDANTS'** |
| | **MEMORANDUM IN** |
| v. | **SUPPORT OF COMBINED** |
| | **MOTION TO DISMISS AND** |
| UNITED STATES DEPARTMENT OF | **MOTION FOR SUMMARY** |
| ENERGY, *et al.*, | **JUDGMENT** |
| Defendants. | |

# **TABLE OF CONTENTS**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    I.     Motion to Dismiss Under Rule 12(b)(1) . . . . . . . . . . . . . . . . . . . . 10

    II.    Motion for Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    I.     Plaintiffs' Claims Against Federal Defendants Should Be
        Dismissed For Lack Of Subject Matter Jurisdiction . . . . . . . . . . . . 12

        A.    Plaintiffs Have Not Shown That They Have Standing . . . . . 12

             1.    Plaintiffs Have Not Met The Injury Requirement . . . . 13

                 a.    Plaintiffs' Alleged Injury Is Overly Speculative
                     And Not Credible . . . . . . . . . . . . . . . . . . . . . . . . 13

                 b.    Plaintiffs' Alleged Injury Is Not Sufficiently
                     Particularized . . . . . . . . . . . . . . . . . . . . . . . . . . 20

                 c.    Plaintiffs' Alleged Injury Lacks A Credible
                     Geographic Nexus To The Challenged Project . 22

              2.    Plaintiffs' Alleged Injury Is Not Fairly Traceable To
                 Federal Defendants' Actions . . . . . . . . . . . . . . . . . . . 24

              3.    A Judicial Decision Against Federal Defendants
                 Would Not Redress Plaintiffs' Alleged Injuries . . . . . 26

        B.    Plaintiffs' Claims Are Moot . . . . . . . . . . . . . . . . . . . . . . . . . 28

i

       C.     The United States Is Immune From Suit Regarding
Documents Issued By The European Commission and
Council For The European Union . . . . . . . . . . . . . . . . . . . . . 30

II.     Federal Defendants Are Entitled To Summary Judgment On
Plaintiffs' Claims Regarding Construction Of The Collider
Because Such Claims Are Time-Barred . . . . . . . . . . . . . . . . . . . . . 32

III.    "Fermilab" Should Be Dismissed As A Defendant Because It
Lacks The Capacity To Be Sued . . . . . . . . . . . . . . . . . . . . . . . . . 34

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

# TABLE OF AUTHORITIES

**FEDERAL CASES**

Animal Lovers Volunteer Ass'n Inc. v. Weinberger,
    765 F.2d 937 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

Ashley Creek Phosphate Co. v. Norton,
    420 F.3d 934 (9th Cir.2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 22, 24, 32

Biotics Research Corp. v. Heckler,
    710 F.2d 1375 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Cedars-Sinai Medical Center v. Shalala,
    125 F.3d 765 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Comm. of U.S. Citizens Living in Nicaragua v. Reagan,
    859 F.2d 929 (D.C. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30-32

Coufal v. Regents of the Univ. of Calif.,
    Case No. C99-2168, 2000 WL 1130063, at *1 n.3
    (N.D. Calif. Aug. 4, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 35

Crawford Country Homeowners Ass'n, Inc. v. Delta Sav. & Loan,
    77 F.3d 1163 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Cripps v. Life Ins. Co. of N. Am.,
    980 F.2d 1261 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Duke Power Co. v. Carolina Envtl. Study Group, Inc.,
    438 U.S. 59 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 23

Ecological Rights Found. v. Pac. Lumber Co.,
    230 F.3d 1141 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

Fleck & Assocs., Inc. v. City of Phoenix,
    471 F.3d 1100 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Forest Guardians v. U.S. Forest Serv.,
    329 F.3d 1089 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Friends of the Earth, Inc. v. Bergland,
    576 F.2d 1377 (9th Cir.1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Gilmore v. U.S. Dep't of Energy,
    4 F. Supp. 2d 912 (N.D. Cal. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Girard v. Donald W. Wyatt Detention Facility Inc.,
    50 Fed. Appx. 5 (1st Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Gonzales v. Gorsuch,
    688 F.2d 1263 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Grove v. Mead School Dist.,
    753 F.2d 1528 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Halet v. Wend Inv. Co.,
    672 F.2d 1305 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Hodge v. Dalton,
    107 F.3d 705 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Holley v. Crank,
    400 F.3d 667 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Industria Panificadora, S.A. v. United States,
    957 F.2d 886 (D.C. Cir.1992) (per curiam) . . . . . . . . . . . . . . . . . . . . . . 32

Intel Corp. v. Advanced Micro Devices, Inc.,
    542 U.S. 241 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Koohi v. United States,
    976 F.2d 1328 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Lujan v. Defenders of Wildlife,
        504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 20, 24

McCarthy v. United States,
        850 F.2d 558 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

McCarthy W. Constructors v. Phoenix Resort Corp.,
        951 F.2d 1137 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10

McKeever v. Anderson,
        No. 1:07-cv-632, 2008 WL 937846, at *4 (W.D. Mich. April 7, 2008) . . 35

Nat'l Wildlife Fed'n v. Espy,
        45 F.3d 1337 (9th Cir.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Neighbors of Cuddy Mountain v. Alexander,
        303 F.3d 1059 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Nelsen v. King County,
        895 F.2d 1248 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Nuclear Info. and Res. Serv. v. Nuclear Regulatory Comm'n,
        457 F.3d 941 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 24, 25

Or. Natural Resources Council v, BLM,
        470 F.3d 1059 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Rattlesnake Coal. v. EPA,
        509 F.3d 1095 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27, 34

Rousseau v. St. Peter Regional Treatment Ctr.,
        No. 07-4823(DSD/JSM), 2008 WL 227690, at *2
        (D. Minn. Jan. 25, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Sierra Club v. Hodel,
        848 F.2d 1068 (10th Cir.1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Sierra Club v. Morton,
     405 U.S. 727 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Sierra Club v. Penfold,
     857 F.2d 1307 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 34

Sierra Club v. Slater,
     120 F.3d 623 (6th Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 34

Steel Co. v. Citizens for a Better Env't,
     523 U.S. 83 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10

Supermail Cargo, Inc. v. United States,
     68 F.3d 1204 (9th Cir.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,
     809 F.2d 626 (9th Cir.1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Thompson v. McCombe,
     99 F.3d 352 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

United States v. Mitchell,
     463 U.S. 206 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

United States v. Nordic Village Inc.,
     503 U.S. 30 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

United States v. Sherwood,
     312 U.S. 584 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

United States v. Spelar,
     338 U.S. 217 (1949) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Valley Forge Christian College v. Ams. United for Separation of
Church & State,
     454 U.S. 464 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Village of Los Ranchos De Albuquerque v. Marsh,
    956 F.2d 970 (10th Cir.1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Villiarimo v. Aloha Island Air, Inc.,
    281 F.3d 1054 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Warth v. Seldin,
    422 U.S. 490 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Wind River Min'g Corp. v. United States,
    946 F.2d 710 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 34

## FEDERAL STATUTES

28 U.S.C. § 2401(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32-34

42 U.S.C. § 15801(3)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

42 U.S.C. § 7139(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## TABLE OF ACRONYMS

| APA | Administrative Procedure Act |
| ATLAS | A Toroidal LHC Apparatus |
| BNL | Brookhaven National Laboratory |
| CERN | European Organization for Nuclear Research |
| CMS | Compact Muon Solenoid |
| DOE | United States Department of Energy |
| EA | Environmental Assessment |
| EIS | Environmental Impact Statement |
| EU | European Union |
| FNAL | Fermi National Accelerator Laboratory |
| LHC | Large Hadron Collider |
| LSAG | LHC Safety Assessment Group |
| NEPA | National Environmental Policy Act |
| NSF | National Science Foundation |
| RHIC | Relativistic Heavy Ion Collider |
| SPC | Scientific Policy Committee |
| TRO | Temporary Restraining Order |

# TABLE OF EXHIBITS

*Exhibit*      *Description*

A      <u>Wagner v. U.S. Dep't of Energy</u>, Case No. C99-2226 MMC (N.D. Cal. May 14, 1999) (Compl.)

B      <u>Wagner v. U.S. Dep't of Energy</u>, Case No. C99-2226 MMC (N.D. Cal. June 11, 1999) (Order Denying Pl.'s Request for T.R.O.)

C      <u>Wagner v. U.S. Dep't of Energy</u>, Case No. C99-2226 MMC (N.D. Cal. June 22, 1999) (Order Denying Pl.'s Mot. to Reconsider Issuance of T.R.O.)

D      <u>Wagner v. U.S. Dep't of Energy</u>, Case No. C99-2226 MMC (N.D. Cal. July 1, 1999) (Order Denying Ex Parte Mot. for Leave to File Mot. for Reconsideration)

E      <u>Wagner v. U.S. Dep't of Energy</u>, Case No. C99-2226 MMC (N.D. Cal. May 22, 2000) (Order Granting Pl.'s Request to File a 1st Am. Compl.; Denying Pl.'s Mot. to Reconsider Denial of T.R.O.)

F      <u>Wagner v. Brookhaven Science Assocs., LLC.</u>, Civ. No. 00-1656 (S.D.N.Y. March 3, 2000) (Compl.)

G      <u>Wagner v. Brookhaven Assocs.</u>, Case No. 00-CV-1672 (JG) (E.D.N.Y. March 28, 2000) (Order)

H      <u>Wagner v. Brookhaven Assocs.</u>, Case No. 00-CV-1672 (JG) (E.D.N.Y. May 26, 2000) (Order)

I      <u>Local 73, Serv. Employees Intl. Union v. Argonne Nat'l Lab.</u>, Civ. No. 05-C-2772, Minute Order (N.D. Ill. Mar. 10, 2006)

J      <u>Wagner v. U.S. Dep't of Energy</u>, Case No. C99-2226 MMC (N.D. Cal.) (Docket Sheet)

## <u>TABLE OF EXHIBITS</u> (continued)

Declaration of Dennis Kovar

Declaration of Joanna M. Livengood

Declaration of Morris Pripstein

Declaration of Bruce Strauss

# INTRODUCTION

This case involves challenges to the United States' financial support for the construction of the Large Hadron Collider ("LHC," or "Collider"), a subatomic particle accelerator on the Franco-Swiss border near Geneva, Switzerland, and research to be conducted there.  The core of Plaintiffs' complaint alleges that the United States and other defendants violated the National Environmental Policy Act ("NEPA") by failing to prepare an adequate analysis of the risks of several theoretical objects that Plaintiffs allege could be produced by the Collider. Defendants United States Department of Energy ("DOE") and the National Science Foundation ("NSF"), collectively referred to as "Federal Defendants," hereby move to dismiss Plaintiffs' claims for lack of subject matter jurisdiction. Federal Defendants also move for summary judgment on the grounds that Plaintiffs' claims against the construction of the Collider are time-barred.[1]

---

[1]Federal Defendants have not yet produced the Administrative Record in this case because the jurisdictional issues, which must be considered prior to the merits, are dispositive.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-96 (1998) (courts may not assume jurisdiction in order to dispose of a case on the merits); accord, McCarthy W. Constructors v. Phoenix Resort Corp., 951 F.2d 1137, 1140 (9th Cir. 1991), superceded on other grounds, Crawford Country Homeowners Ass'n, Inc. v. Delta Sav. & Loan, 77 F.3d 1163, 1165-66 (9th Cir. 1996).  In addition to the jurisdictional issues, Plaintiffs' claims against construction of the Collider are time-barred.  The Ninth Circuit has found that the statute of limitations applicable to this case is not jurisdictional.  See Cedars-Sinai

(continued...)

1

Plaintiffs have failed to show that they have standing because their alleged injury is overly speculative and not credible.  Plaintiffs' allegations regarding purely hypothetical occurrences that they claim pose a safety risk at the LHC are not accepted by the scientific community, are not based on rigorous scientific analysis, and are unfounded.  In addition, Plaintiffs do not allege any injury--other than an extraordinarily speculative, non-credible one--that is sufficiently particularized, or with any geographic nexus to the challenged project, which is on the other side of the world from this Court.  Nor can Plaintiffs demonstrate that their alleged harms are fairly traceable to actions by Federal Defendants, since the Collider is controlled and operated by the European Organization for Nuclear

---

[1]/(...continued)
Medical Center v. Shalala, 125 F.3d 765, 770-71 (9th Cir. 1997); see also Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1206 n. 2 (9th Cir.1995) (statute of limitations argument should have been considered under Rule 12(b)(6) rather than Rule 12(b)(1)).  Because the facts necessary to assert the statute of limitations argument are found in Federal Defendants' declarations, Federal Defendants bring their statute of limitations argument through a motion for summary judgment rather than a motion to dismiss under Rule 12(b)(6).  See Grove v. Mead School Dist., 753 F.2d 1528, 1532-33 (9th Cir. 1985) (when court looks beyond the pleadings in evaluating a Rule 12(b)(6) motion, it must treat the motion as one for summary judgment).  In the event that the Court denies Federal Defendants' motion, Federal Defendants reserve the right to present additional defenses on the merits after producing the Administrative Record.

2

Research ("CERN"), an intergovernmental organization whose membership does not include the United States.[2]

Plaintiffs also cannot show that a favorable decision would redress their alleged harms from construction of the Collider, because the funds for construction of the components that Federal Defendants provided for the Collider have been disbursed and expended.  Challenges to the Federal Defendants' participation in research at the Collider are also not redressible because the experiments would likely still occur with non-federally-financed researchers even if the United States did not participate.  Plaintiffs' claims are also moot, and their challenge to Federal Defendants' support for constructing the Collider is time-barred.  In addition, Federal Defendants are immune from suit for the allegations that they acted contrary to various European documents cited by Plaintiffs.

Finally, Plaintiffs also name as a defendant "Fermilab," which is a common name for the Fermi National Accelerator Laboratory ("FNAL"), a DOE-owned, contractor-operated national laboratory.  See 42 U.S.C. § 15801(3)(D).  The FNAL

───────────────────

[2]CERN, which is known by an acronym of its former name, Conseil Européen pour la Recherche Nucléaire, is an intergovernmental organization headquartered in Geneva, Switzerland.  See http://press.web.cern.ch/public/en/About/ Name-en.html (last visited June 24, 2008).  CERN is not part of the United States government, is not represented by the Department of Justice, and has not entered a formal appearance in this lawsuit.

should be dismissed as a defendant because it is not a legal entity with the capacity to be sued.  See Local 73, Serv. Employees Intl. Union v. Argonne Nat'l Lab., Civ. No. 05-C-2772, Minute Order (N.D. Ill. Mar. 10, 2006) (attached as Ex. I) (dismissing as a party a national laboratory owned by DOE on the grounds that the laboratory was not a legal entity subject to suit); see also Coufal v. Regents of the Univ. of Calif., Case No. C99-2168, 2000 WL 1130063, at *1 n.3 (N.D. Calif. Aug. 4, 2000) (noting that a national laboratory owned by DOE was not a legal entity, in a case in which the laboratory was not named as a defendant).

The FNAL is not an agency or corporation of the federal government, but simply a collection of physical assets (e.g., land, buildings, infrastructure, and equipment) owned by DOE, where scientific research and development activities are conducted.  See Fed. Defs.' Decl. of Joanna M. Livengood ("Livengood Decl.") ¶ 5.  DOE directs and approves every major project at the FNAL and provides funding for operations.  See id. ¶ 4; see also 42 U.S.C. § 7139(b)(3) (charging DOE's Office of Science with advising Secretary of Energy about management of "multipurpose laboratories" other than those associated with the nuclear weapons complex). "Fermilab" should therefore be dismissed as a party.

This is not the first time plaintiff Walter L. Wagner ("Wagner") has challenged a particle accelerator based upon his speculative theories.  In 1999,

4

Wagner brought suit in the Northern District of California to enjoin operation of the Relativistic Heavy Ion Collider ("RHIC") at DOE's Brookhaven National Laboratory ("BNL") in New York.  See Wagner v. U.S. Dep't of Energy, Case No. C99-2226 MMC (N.D. Cal. May 14, 1999) (Compl.) (attached as Ex. A). Wagner's request for a temporary restraining order ("TRO") was denied, and his affidavit in support of his request was found to be "speculative."  See id., Order of June 11, 1999, at 4 (attached as Ex. B).  The court denied three subsequent requests for reconsideration and eventually dismissed the lawsuit.  See id., Order of June 22, 1999 (attached as Ex. C); id., Order of July 1, 1999 (attached as Ex. D); id., Order of May 22, 2000 (attached as Ex. E); see also id., Docket Sheet at 5 (Doc. Nos. 66, 67) (attached as Ex. J).

Wagner filed another lawsuit challenging the RHIC in federal court in New York, where his request for TRO there was also denied, and his complaint was subsequently dismissed.  See Wagner v. Brookhaven Science Assocs., LLC., Civ. No. 00-1656 (S.D.N.Y. March 3, 2000) (Compl.) (attached as Ex. F); Wagner v. Brookhaven Assocs., Case No. 00-CV-1672 (JG) (E.D.N.Y. March 28, 2000) (Order) (attached as Ex. G); id., Order of May 26, 2000 (attached as Ex. H).  In neither of these cases did the courts give any credence to Wagner's theories about the types of dangerous effects that Plaintiffs allege would result from subatomic

5

particle collisions.  This Court should similarly reject Plaintiffs' challenges for the pure speculation they are and dismiss Plaintiffs' claims against Federal Defendants.

## BACKGROUND

The LHC is a particle accelerator straddling the French-Swiss border.  Fed. Defs.' Decl. of Bruce Strauss ("Strauss Decl.") ¶ 6.  The Collider consists of a ring--approximately 27 kilometers (about 17 miles) in circumference--of superconducting magnets and particle accelerating structures, located 100 meters (about 330 feet) underground.  Id.  The Collider is designed to accelerate proton particles nearly to the speed of light and collide them at the center of four large detectors designed to passively observe these collisions.  Id. ¶ 7.

The Collider is the product of more than a decade of planning and collaboration headed by CERN.  See Strauss Decl. ¶ 6.  CERN was established by convention in 1954 and consists of 20 European member states, each represented in CERN's governing council.  See Strauss Decl. ¶ 5; see also id., Attach. 7.  In December 1997, the United States--through DOE and NSF--entered into an international cooperation agreement with CERN ("1997 Agreement") that outlined the parties' respective responsibilities for scientific and technical cooperation in the construction of the Collider and the subsequent research that would occur once

6

the Collider was built.  See id.. ¶ 8; see also id., Attach. 4.  The United States is

not a member of CERN.  See id. ¶ 12; see also id., Attach. 7 (listing member

states).  CERN has sole responsibility for operating and maintaining the Collider.

See id. ¶ 13; see also id., Attach. 4 at 6 § (10.4).

The 1997 Agreement provided that the United States would assist in the

construction of some superconducting magnets to be placed in the Collider.  See

Strauss Decl., Attach. 4 at 3-4 (Article III).  This resulted in the United States

providing assistance in the construction of 38 of more than 1800 superconducting

magnets to be placed in the accelerator.  See Strauss Decl. ¶ 20.  The 1997

Agreement also provided that the United States would participate in the

construction of two detectors, known as the Compact Muon Soleonid ("CMS")

and A Toroidal LHC Apparatus ("ATLAS") detectors (collectively, "Detectors").

See id. ¶ 20; id., Attach. 4 at 4 (§ 3.2).  The United States also will participate in

experiments involving the Detectors.  See id. ¶¶ 24, 25; id., Attach. 4 at 4 (§ 3.2).

The 1997 Agreement also gave the United States a non-voting "observer" status in

CERN's council.  See id. ¶ 12; see also id., Attach. 4 at 3 (§ 1.9), 5 (§ 7.1).

Pursuant to the 1997 Agreement, DOE and NSF contributed a total of $531

million toward construction of the Collider, which is less than 10% of the total

construction costs.  See Strauss Decl. ¶¶ 14, 21, 22; Fed. Defs.' Decl. of Morris

Pripstein ("Pripstein Decl.") ¶ 7.[3/]  NSF, which contributed a total of $81 million to construction of the Detectors, expended such funds by entering into cooperative agreements in 1999 with Northeastern and Columbia Universities.  See Pripstein Decl. ¶¶ 9(a), 9(b) & Attachs. B, C.  All of the funds under the cooperative agreements were disbursed and spent prior to this lawsuit.  See id. ¶¶ 9(a), 9(b).

DOE, which contributed a total of $450 million toward construction costs, began funding the construction of the Collider in 1998.  See Strauss Decl. ¶ 18.  From 1998 through 2005, DOE spent $200 million on the construction of the accelerator components.  Id.  From 1998 through 2007, DOE spent $250 million on the construction of the Detectors.  Id.; see also id., Attach. 9.  DOE made these expenditures by providing funding to several national laboratories (including FNAL, BNL, and others) for construction, pre-installation testing, and delivery of LHC accelerator components, and for assistance to CERN with detector installation and verification testing.  Id. ¶ 19.  All such DOE contributions to

_____

[3/]DOE's total contribution to construction was $450 million (Strauss Decl. ¶¶ 14, 21), while NSF contributed $81 million (Pripstein Decl. ¶ 7), for a total of $531 contributed by the United States toward construction.  See Strauss Decl. ¶ 14.  The total cost of constructing the LHC, excluding labor costs, is roughly $5.84 billion.  See Strauss Decl. ¶ 21 (stating cost in Swiss Francs, based upon one-to-one U.S. dollar equivalence).

construction (totaling $450 million) were disbursed and spent prior to this lawsuit. Id. ¶¶ 21-22.

The United States' contributions to the construction of the Detectors and the accelerator components have been completed. See Pripstein Decl. ¶ 7; Strauss Decl. ¶ 22. The Detectors are located in Geneva, Switzerland, and are under the control of CERN. See Pripstein Decl. ¶ 7. The accelerator components were physically delivered to CERN in Switzerland by March 2007. See Strauss Decl. ¶ 22. In addition, the United States transferred title of the accelerator components to CERN in September 2007. Id. DOE's contributions to construction of the Detectors were entirely disbursed by June 2007 (id.), and NSF's contributions were disbursed by the end of fiscal year 2003. See Pripstein Decl. ¶¶ 9(a), 9(b). The construction and operation of the Collider abroad by foreign governments was the subject of safety analyses by CERN that were accepted by the host state authorities in France and Switzerland. See Fed. Defs.' Decl. of Dennis Kovar, Attach. A.

In addition to providing support for the construction of some of the components of the Collider, Federal Defendants also provided support for research experiments at the Collider. For example, in 2007 NSF decided to contribute $87 million to the operation and maintenance of the Detectors for five years. See

9

Pripstein Decl. ¶¶ 10(a), 10(b); <u>see also</u> <u>id.</u>, Attachs. D, E (cooperative

agreements).  Likewise, DOE will provide support for research scientists

participating in experiments with the Detectors.  <u>See</u> Strauss Decl. ¶¶ 24, 25.

Approximately 3,930 scientists from both the United States and other countries are

expected to participate in research involving the Detectors.  <u>See</u> Strauss Decl. ¶ 25

(Table 2).  In total, Federal Defendants will be providing financial support for

approximately 20% of the research positions at ATLAS, and 34% at CMS.  <u>See</u>

Pripstein Decl. ¶ 11.

In preparation for operations, CERN has begun cooling the Collider to just

about a couple degrees above absolute zero.  <u>See</u> Strauss Decl., Attach. 17.  After

the whole Collider is cooled, electrical testing will be concluded in readiness for

the first beams, which are currently scheduled for August 2008.  <u>See</u> <u>id</u>.

## <u>STANDARD OF REVIEW</u>

## I.    MOTION TO DISMISS UNDER RULE 12(b)(1)

Jurisdiction is a threshold issue that must be addressed before considering

the merits.  <u>Steel Co.</u>, 523 U.S. at 94-96;  <u>McCarthy W. Constructors</u>, 951 F.2d at

1140.  "Defects in subject matter jurisdiction may be raised at any time, by the

parties or by the court on its own motion, and may never be waived."  <u>Cripps v.</u>

<u>Life Ins. Co. of N. Am.</u>, 980 F.2d 1261, 1264 (9th Cir. 1992) (citation omitted).

10

The burden of proving subject matter jurisdiction rests upon Plaintiffs, who are the "part[ies] invoking the federal court's jurisdiction." Thompson v. McCombe, 99 F.3d 352, 353 (9th Cir. 1996). If the Court finds that it lacks subject matter jurisdiction, then it "must dismiss the action." Fed. R. Civ. P. 12(h)(3).

On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may attach materials outside the pleadings for the purpose of proving jurisdictional matters. See, e.g., McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988) ("when considering a motion to dismiss pursuant to rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence . . . to resolve factual disputes concerning the existence of jurisdiction."). Consideration of such for the purposes of addressing jurisdiction does not convert the motion to dismiss into one for summary judgment. Biotics Research Corp. v. Heckler, 710 F.2d 1375, 1379 (9th Cir. 1983).

## II.   MOTION FOR SUMMARY JUDGMENT

"On a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and determine whether there are any genuine issues of material fact . . . ." Holley v. Crank, 400 F.3d 667, 673 (9th Cir. 2005) (citation omitted). All reasonable inferences supported by the evidence

11

are to be drawn in favor of the nonmoving party.  See <u>Villiarimo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1061 (9th Cir. 2002). "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving party, summary judgment must be denied." <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 631 (9th Cir.1987).

## **ARGUMENT**

## I.   **PLAINTIFFS' CLAIMS AGAINST FEDERAL DEFENDANTS SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION**

### A.   **Plaintiffs Have Not Shown That They Have Standing**

Plaintiffs are unable to demonstrate that they have standing to bring suit.  In order to establish standing, Plaintiffs must demonstrate that they have suffered an "injury in fact–an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992) (citations, internal quotations, and footnote omitted).   Plaintiffs must also show that such injury is fairly traceable to Federal Defendants' actions.  <u>Id</u>.  Finally, Plaintiffs must demonstrate that it is "likely" that a favorable judicial decision would adequately redress Plaintiffs' injury.  <u>Id.</u> at 561.  Plaintiffs have not shown that they meet any of these requirements.

1.     **Plaintiffs Have Not Met the Injury Requirement**

      a.     **Plaintiffs' Alleged Injury Is Overly Speculative and Not Credible**

Plaintiffs allege that a particle colliding machine that is located on the Franco-Swiss border will produce "potential adverse consequences" that will impact all of the planet.  Pls.' Compl. ¶¶ 13, 14.  However, Plaintiffs' hypothetical, scientifically unfounded doomsday proclamation does not allege any credible injury that is specific to Plaintiffs' concrete interests.[4]

Plaintiffs have not satisfied the requirement that the injury they allege must be "credible" rather than remote or hypothetical.  See Nelsen v. King County, 895 F.2d 1248, 1250 (9th Cir. 1990).   Plaintiffs allege that by causing the collision of subatomic particles, the Collider could create dangerous objects that they describe

---

[4]Moreover, Plaintiffs' interest in obtaining and reviewing a further report on the safety of the Collider (Pls.' Compl. ¶¶ 14, 15) is purely procedural, since Plaintiffs only allege that they are interested in obtaining the report for informational purposes–namely, to see whether the report addresses their speculative theories about what possible dangerous objects they believe the Collider might create. Such an informational or procedural interest is not the type of concrete interest-- whether aesthetic, recreational, or otherwise--that is required in cases involving the National Environmental Policy Act ("NEPA").  See Ashley Creek Phosphate Co. v. Norton, 420 F.3d 934, 938 (9th Cir.2005) ("A free-floating assertion of a procedural violation, without a concrete link to the interest protected by the procedural rules, does not constitute an injury in fact.").  The additional LHC safety report that Plaintiffs identify in their Complaint was publicly released by CERN on June 20, 2008.  See Strauss Decl. ¶ 31; id., Attach. 15.

as "strangelets," "micro black holes," and "magnetic monopoles" that allegedly might destroy the planet.  At the same time, however, one of Plaintiffs' declarants concedes that it is "quite possible" that the Collider might operate without harm. Pls.' Aff. of Mark Leggett ("Leggett Aff.") (Doc. No. 1, Attach. #4) ¶ 7.

Similar concerns were raised before the start of operations of the Relativistic Heavy Ion Collider at DOE's Brookhaven National Laboratory in Upton, New York.  See Strauss Decl. ¶ 28; see also Pripstein Decl. ¶ 12.  In 1999, the Director of BNL commissioned a prominent group of U.S. physicists (including one who is now a Nobel Laureate) to review the safety issue at RHIC from a scientific standpoint.  See Strauss Decl. ¶ 29.  That report concluded that "the candidate mechanisms for catastrophe scenarios at RHIC are firmly excluded by existing empirical evidence, compelling theoretical arguments, or both."  Id. (quoting W. Busza et al., "Review of Speculative 'Disaster Scenarios' at RHIC" (September 28, 1999) ("1999 RHIC Safety Report") at 1,2).[5]  The RHIC has been operating safely since 2000, and none of the hypothesized catastrophe scenarios have occurred in the years since RHIC operations began.  Id. ¶ 44; see also Pripstein Decl. ¶ 12.

---

[5] A complete copy of the 1999 RHIC Safety Report is attached to the Strauss Declaration as Attachment 13.

In 2002, CERN commissioned an LHC Safety Study Group to carry out a similar study for the LHC.  See Strauss Decl. ¶ 30.  The group was composed of six European theoretical physicists not affiliated with CERN.  Id.  That report concluded:

> We review the possibility of producing dangerous objects during heavy-ion collisions at the Large Hadron Collider.  We consider all such objects that have been theoretically envisaged, such as negatively charged strangelets, gravitational black holes, and magnetic monopoles.  We find no basis for any conceivable threat.

Strauss Decl. ¶ 30 (quoting J.-P. Blaizot et al., "Study of Potentially Dangerous Events During Heavy-Ion Collisions at the LHC:  Report of the LHC Safety Study Group" (February 28, 2003) ("2003 LHC Safety Report") at iii);[6/] see also Pripstein Decl. ¶ 13.

Recently, CERN commissioned a group of expert physicists to re-examine the issue of safety in particle collisions at the LHC.  See Strauss Decl. ¶ 31.  On June 20, 2008, CERN's LHC Safety Assessment Group ("LSAG") released a report entitled "Review of the Safety of LHC Collisions" ("2008 LSAG Report").  See Strauss Decl. ¶ 31; see also id., Attach. 15.  The report confirmed the findings and conclusions of the earlier reports and, by incorporating recent developments in

_____

[6/] A complete copy of the 2003 LHC Safety Report is attached to the Strauss Declaration as Attachment 14.

theoretical and experimental physics, further strengthened these conclusions.  See

id.  The 2008 LSAG Report concluded:

> Having reviewed the theoretical and experimental
> developments since the previous safety report was
> published, we confirm its findings. There is no basis for
> any concerns about the consequences of new particles
> or forms of matter that could possibly be produced by
> the LHC.

Id. (quoting J. Ellis et al., "Review of the Safety of LHC Collisions" (June 20,

2008) ("2008 LSAG Report") at 14).[7]  The 2008 LSAG Report concluded with the

following final statement:

> We have considered all the proposed speculative
> scenarios for new particles and states of matter that
> currently raise safety issues.  Since our methodology is
> based on empirical reasoning based on experimental
> observations, it would be applicable to other exotic
> phenomena that might raise concerns in the future.

Strauss Decl., Attach. 15 at 14.

The 2008 LSAG Report was reviewed by the Scientific Policy Committee

("SPC"), an external scientific advisory group that reports to the CERN Council.

See Strauss Decl. ¶ 32.  The SPC, which is composed of many renowned

physicists not affiliated with CERN, appointed a five-member panel of the SPC to

---

[7] A complete copy of the 2008 LSAG Report is attached to the Strauss Declaration
as Attachment 15.

review in detail the LSAG Report and other associated documents addressing

LHC safety.  Id. The SPC panel, including one Nobel Laureate, reached the

following conclusion in its report to the CERN Council:

> To summarize, we fully endorse the conclusions of
> the LSAG report:  there is no basis for any concerns
> about the consequences of new particles or forms of
> matter that could possibly be produced at the LHC.

Id. (quoting CERN Scientific Policy Committee, "SPC Report On LSAG

Documents" (June 20, 2008) ("SPC Report") at 4).[8] As reported by CERN in its

press release of June 20, 2008, the SPC panel presented its conclusion to a

meeting of the full 20 members of the SPC, who unanimously approved it.  Id.; see

also Strauss Decl., Attach. 17.

DOE's Office of Science for High Energy Physics (hereinafter, "DOE's

High Energy Physics Office") has reviewed Plaintiffs' allegations in this lawsuit

concerning the three types of hypothetical occurrences that they claim pose a

safety risk at the LHC, and has concluded that the arguments presented by

Plaintiffs are not accepted by the scientific community.  See Strauss Decl. ¶ 34;

see also id. ¶¶ 44-47.  It is the conclusion of DOE's High Energy Physics Office

_____

[8] A complete copy of the SPC Report is attached to the Strauss Declaration as
Attachment 16.

that Plaintiffs' claims of a catastrophe occurring due to LHC operations are not based on rigorous scientific analysis and are unfounded.  Id.

In reaching that conclusion, DOE's Office of High Energy Physics specifically analyzed Plaintiffs' claims concerning the hypothetical dangers posed by strangelets (id. ¶¶ 35-37); black holes (id. ¶¶ 38-41); and monopoles (id. ¶¶ 42, 43).  It noted the fact that neither the RHIC experiments, nor the experiments at the Tevatron collider facility at DOE's Fermi National Accelerator Laboratory, have detected any hints of the existence of strangelets, micro black holes, or magnetic monopoles.  Id. ¶ 44.

Dr. Bruce Strauss states in his declaration that he and other scientists within DOE's Office of High Energy Physics have reviewed the analyses in the 1999 RHIC Safety Report, the 2003 LHC Safety Report, and the 2008 LSAG Report, and that he is authorized to state that his office agrees with the conclusions of those reports.  See id. ¶¶ 45, 46, 47.  Since the release of the first two of those reports, in 1999 and 2003, DOE's Office of High Energy Physics is not aware of a single instance where the conclusions of those reports have been contested or rebutted in any particle physics peer-reviewed publication or scholarly forum.  Id. ¶¶ 45, 46.  The third of those reports, released on June 20, 2008, confirms the findings and conclusions of the two earlier safety reports.  See id. ¶ 31.

18

Dr. Morris Pripstein of NSF, in his declaration, has also concluded that the alleged catastrophic results claimed by Plaintiffs are not scientifically supportable. See Pripstein Decl. ¶¶ 14-15.  Dr. Pripstein examined Plaintiffs' claims concerning the three types of hypothetical dangers that they allege pose a safety risk at the LHC:  monopoles (id. ¶¶ 15-16); micro black  holes (id. ¶¶ 17-18); and strangelets (id. ¶ 19).  He concludes that there is no empirical evidence that supports Plaintiffs' allegations of hypothetical harm in their Complaint or supporting affidavits; and that there has not been any refutation in recognized peer-reviewed professional journals of the findings set forth in the 1999 RHIC Safety Report or in the 2003 LHC Safety Report.  Id. ¶ 20.

In sum, Plaintiffs lack standing because their alleged injury is not credible and is extraordinarily speculative.  Scientifically, there is no basis for any conceivable threat from the objects that Plaintiffs have theoretically envisaged, such as strangelets, black  holes, and magnetic monopoles.  See Strauss Decl. Attach. 14 at iii.  Nor is there any basis for any concerns about the consequences of new particles or forms of matter that could possibly be produced by the LHC. See id., Attach. 15 at 14; id. Attach. 16 at 4.

19

### b.     Plaintiffs' Alleged Injury Is Not Sufficiently Particularized

Plaintiffs have not met the requirements that they allege particularized injury by showing that the relief they seek would benefit them in a manner distinct from the "public at large."  Defenders of Wildlife, 504 U.S. at 573-74; see also Duke Power Co. v. Carolina Envtl. Study Group, Inc., 438 U.S. 59, 80 (1978) ("[W]e have declined to grant standing where the harm asserted amounts only to a generalized grievance shared by a large number of citizens in a substantially equal measure."); Animal Lovers Volunteer Ass'n Inc. v. Weinberger, 765 F.2d 937, 939 (9th Cir. 1985) (party must demonstrate an interest that is "distinct from the interest held by the public at large") (citing Sierra Club v. Morton, 405 U.S. 727, 736-741 (1972)).

Plaintiffs' generalized interest in avoiding the non-credible "potential adverse consequences" and "adverse scenarios" that they have alleged (Pls.' Compl. ¶¶13, 14) is not sufficiently particularized to confer standing.  See Duke Power Co., 438 U.S. at 80.  Plaintiffs do not allege that they live, recreate, study, or have any other interest that is geographically near the Collider.  Rather, they appear to base standing upon the premise that they have been following various hypothetical theories about the Collider as part of their activities on the world-

20

wide web and in writing on "scientific themes" and would like to see an additional report produced on the risks of the collider.  See Pls.' Aff. of Walter L. Wagner ("W.L. Wagner Aff.") (Doc. No. 1, Attach. #3) ¶¶ 5, 7, 8, 11, 12; see also Pls.' Aff. of Luis Sancho ("Pls.' Sancho Aff.") (Doc. No. 1, Attach. #1) ¶ 1.  Plaintiffs also allege concerns about the "ethics" of the Collider project, alleging that it amounts to "criminal negligence," "terrorism," or "genocide," and further suggest that the project should be de-funded in favor of satellite and telescope research. Pls.' Sancho Aff. ¶¶ 41, 42, 50, 52.

Plaintiffs' concerns are not distinguishable from those that could be held by any other interested person on the other side of the globe from the Collider.  See Animal Lovers, 765 F.2d at 939. "The federal courts were simply not constituted as ombudsmen of the general welfare."  See Valley Forge Christian College v. Ams. United for Separation of Church & State, 454 U.S. 464, 487 (1982). Because Plaintiffs' concerns are not meaningfully different from those of people with a generalized interest in opposing the Collider, they are inadequate to confer standing.

### c.      Plaintiffs' Alleged Injury Lacks A Credible Geographic Nexus to the Challenged Project

In NEPA cases, plaintiffs frequently allege that they would suffer a procedural injury because an agency failed to consider environmental impacts related to a proposed action. See Ashley Creek, 420 F.3d at 938. Such procedural injuries, however, must be accompanied by threat to a concrete interest, which includes a "'geographic nexus' between the individual asserting the claim and the location suffering an environmental impact." Id. (citation omitted).

Here, Plaintiffs' "geographic nexus" between their alleged non-credible injury and the challenged activity is far too attenuated to support standing. See Nuclear Info. and Res. Serv. v. Nuclear Regulatory Comm'n, 457 F.3d 941, 953 (9th Cir. 2006) (plaintiffs lacked standing where they "have not alleged with any specificity what geographic areas are most likely to be affected, other than to assert that the [challenged] regulations impact highways nationwide"); Ashley Creek, 420 F.3d at 938-39 (plaintiff whose phosphate fields were located 250 miles away from ridge where mining would occur had not demonstrated sufficient geographic nexus).

Plaintiffs brought suit and claim legal residence and/or citizenship in Hawaii. See Pls.' Compl. ¶¶ 1, 2. One of the Plaintiffs, Wagner, alleges that he is

22

retired from positions as a teacher and government safety officer (among other jobs), and that he currently serves as an editor for "Wikipedia" on the world-wide web.  Pls.' W.L. Wagner Aff. ¶¶ 3, 4, 5.  The other Plaintiff, Luis Sancho, alleges that he is a researcher in the field of "Time Theory" and a writer on scientific themes who chairs annual world conferences and has published in European magazines.  Pls.' Sancho Aff. ¶¶ 1, 2, 3.

Apart from a description of their writing activities and interest in particle physics, Plaintiffs do not provide any indication of what "concrete interests" would be impacted by the Collider.  Unlike a plaintiff that is an organization, Plaintiffs here cannot assert standing based upon the harm to the interests of third parties; rather, as real individuals, Plaintiffs must show that their own interests are impacted.  See Halet v. Wend Inv. Co., 672 F.2d 1305, 1308 (9th Cir. 1982) ("[T]he Supreme Court has further limited standing, as a prudential matter, requiring that a party assert its own rights and interests not those of third parties."); see also Duke Power Co., 438 U.S. at 80; Warth v. Seldin, 422 U.S. 490, 499 (1974).  Plaintiffs have not met that burden.[9]

---

[9]Exceptions to this prudential requirement are "disfavored."  Fleck & Assocs., Inc. v. City of Phoenix, 471 F.3d 1100, 1105 n.3 (9th Cir. 2006).  Because Plaintiffs have not even identified any concrete interests held by themselves, much less by any third parties, they have not shown that any exceptions apply.

Plaintiffs allege that the operation of the Collider may possibly produce "strangelets," micro-black holes, and/or "magnetic monopoles," that could, Plaintiffs allege, "eventually" destroy the planet.  Pls.' Compl. ¶¶ 13(a), (b), (c). While Plaintiffs' theories may be creative, they provide no credible allegations as to how a machine located on the other side of the planet could harm any of Plaintiffs' interests in this judicial district.  See, e.g., Strauss Decl. ¶¶ 28-47; id. Attachments 13-17; Pripstein Decl. ¶¶ 12-20.  Cf. Nuclear Info. and Res. Serv., 457 F.3d at 953; Ashley Creek 420 F.3d at 938-39.

### 2.    Plaintiffs' Alleged Injury Is Not Fairly Traceable to Federal Defendants' Actions

Plaintiffs cannot establish causation, because their alleged harms are not fairly traceable to Federal Defendants, but rather to CERN, the intergovernmental entity that operates and controls the Collider.  To establish causation, Plaintiffs must show that their injury is "fairly traceable" to the conduct of Federal Defendants as opposed to the decisions of some third party.  See Defenders of Wildlife, 504 U.S. at 560; Ecological Rights Found. v. Pac. Lumber Co., 230 F.3d 1141, 1152 (9th Cir. 2000).

In this case, Plaintiffs complain of injuries that allegedly would occur from operating the Collider.  Although Federal Defendants will be participating in

24

research experiments involving the Collider, they do not have authority to decide whether or not the Collider operates.[10]  See Strauss Decl. ¶ 13; see also id., Attach. 4 at 6 (§ 10.4) ("After the completion and commissioning of the LHC accelerator, CERN shall be responsible for its operation and maintenance").  Instead, the authority to operate and maintain the Collider is vested in CERN.  See id.  The United States is not a member of CERN, but only has the non-voting status of an "observer" within CERN's council.  See id. ¶ 12; see also id., Attach. 4 at 5 (§ 7.1).

Although ordinarily the requirements of causation and redressability are "relaxed," when Plaintiffs allege NEPA claims, this is not an ordinary case.  See Nuclear Info. & Resource Serv. v. Nuclear Regulatory Comm'n, 457 F.3d 941 (9th Cir. 2006).  The Collider is located halfway around the world in two foreign sovereign nations, and the United States' financial contribution to the project was only a small fraction (less than 10%) of the overall construction cost.  See Strauss Decl. ¶¶ 14, 21, 22; Pripstein Decl. ¶ 7.  The Collider is controlled by a council of representatives of other foreign sovereign nations that does not provide a voting

---

[10]Even if the Federal Defendants were not participating in the research experiments at the Collider, it is likely that such experiments would still go forward with the participation of international and other non-federally funded scientists.  See Strauss Decl. ¶ 27; Pripstein Decl. ¶ 11.

role for the United States.  See Strauss Decl. ¶¶ 12, 13; see also id., Attach. 4 at 3

(§ 1.9), Attach. 4 at 5 (§ 7.1).  It is likely that the research experiments would still

go forward even without federally-funded participation.  See Strauss Decl. ¶ 27;

Pripstein Decl. ¶ 11.  Accordingly, Plaintiffs have failed to meet even the

"relaxed" requirement for causation.

### 3.    A Judicial Decision Against Federal Defendants Would Not Redress Plaintiffs' Alleged Injuries

Nor can Plaintiffs establish the third requirement for constitutional standing,

namely that the injury about which they complain be redressed by a favorable

judicial decision.  See Rattlesnake Coal. v. EPA, 509 F.3d 1095, 1103 (9th Cir.

2007).  As the Ninth Circuit has recently explained, when a grant has been

disbursed and expended by a third party prior to suit, a plaintiff's NEPA claims

cannot be redressed.  See id. (noting that requiring an environmental assessment

("EA") or environmental impact statement ("EIS") in such circumstances "would

not redress any personal health or property injuries suffered by the [plaintiff's]

members as a result of the construction" of the challenged project).

As explained in Federal Defendants' declarations, DOE and NSF have

completely disbursed the funds for construction of the Collider, and all that money

has been spent.  See Strauss Decl. ¶ 21, 22; Pripstein Decl. ¶¶ 9(a), 9(b); see also

Pripstein Decl. ¶ 10 (noting that funds for pre-operational testing and preparation for Detectors have been disbursed and spent).   Federal Defendants provided financing for construction of the accelerator components, and also for two of the four detectors.   See Strauss Decl. ¶ 20; Pripstein Decl. ¶¶ 9(a), 9(b).   These components have already been transported to Switzerland.   See Strauss Decl. ¶ 22; Pripstein Decl. ¶ 7.   DOE even transferred to CERN the title to the accelerator components in September 2007.   See Strauss Decl. ¶ 22.   All of this occurred prior to the filing of Plaintiffs' lawsuit.   See id.; Pripstein Decl. ¶¶ 9(a), 9(b), 10. Because the money for construction of the Magnets and the Detectors has been disbursed and expended, Plaintiffs' claims cannot be redressed by a favorable decision of the Court.   See Rattlesnake Coal., 509 F.3d at 1103; see also Gonzales v. Gorsuch, 688 F.2d 1263, 1268 (9th Cir. 1982) (concluding that once the project was completed and the federal funds expended, the court could not bring about the relief sought by the plaintiff).

Nor can the Court redress Plaintiffs' claims against Federal Defendants' support for research at the Collider.   Federal Defendants have decided to provide financing for 20% and 34% percent of the research positions at the ATLAS and CMS detectors, respectively.   See Pripstein Decl. ¶ 11.   If the U.S. did not provide such funding, however, the experiments would still occur with the remaining non-

27

federally financed scientists.  See id.; see also Strauss Decl. ¶ 27.  Accordingly, any alleged harm from Federal Defendants' support for scientific research experiments at the Collider could not be redressed by a favorable judicial decision.

In sum, Plaintiffs have not shown even at this early phase of the litigation that they meet any of three main requirements for standing to maintain suit.

### B.    Plaintiffs' Claims Are Moot

Plaintiffs' claims against Federal Defendants are moot, because there is not any effective relief that the Court can order.  See Friends of the Earth, Inc. v. Bergland, 576 F.2d 1377, 1379 (9th Cir.1978) ("Where the activities sought to be enjoined have already occurred, and the appellate courts cannot undo what has already been done, the action is moot.").  Although a case does not become moot simply because a project has been completed, a court that cannot order any effective relief may not continue to retain jurisdiction.  See Forest Guardians v. U.S. Forest Serv., 329 F.3d 1089, 1094 (9th Cir. 2003) (noting that a case is moot where "no effective relief for the alleged violation can be given") (quoting Neighbors of Cuddy Mountain v. Alexander, 303 F.3d 1059, 1065 (9th Cir.2002)); see also Or. Natural Resources Council v.BLM, 470 F.3d 818 (9th Cir. 2006).

As explained supra at Part I.A.3, the United States has completed construction of the accelerator components and Detectors, has delivered them to

28

CERN in Switzerland.  See Strauss Decl. ¶ 22; Pripstein Decl. ¶ 7.  The United

States has already transferred to CERN the title to the accelerator components.

See Strauss Decl. ¶ 22.  As for the Detectors, they have been fully constructed and

are now located in Geneva, Switzerland, and under the control of CERN.  See

Pripstein Decl. ¶ 7.  The United States does not have the authority to decide

whether the Collider will operate.  See Strauss Decl. ¶ 13; id., Attach. 4 at 6

(§ 10.4).[11]/  Given the United States' inability to authorize operation of the

Collider, there is no effective relief available against Federal Defendants.

Even if the Court were to order Federal Defendants not to participate in

experiments involving the Detectors, the research would still proceed, likely with

member countries providing replacements for the U.S. scientists.  See Strauss

Decl. ¶ 27; Pripstein Decl. ¶ 11.  Ordering the United States to prepare an EA or

EIS while the Collider is operated by CERN, and experiments are performed by

other non-U.S. scientists, simply would not provide Plaintiffs with any meaningful

relief.  See Bergland, 576 F.2d at 1379.[12]/  Plaintiffs' claims are therefore moot.

---

[11]/CERN, which does have that authority, has not entered an appearance in this
lawsuit.  Nor have Plaintiffs demonstrated that they have effected service of
process upon CERN.

[12]/In addition, the safety report that Plaintiffs identify in their Complaint (Pls.'
Compl. ¶¶ 14, 15) was publicly released by CERN on June 20, 2008.  See Strauss
(continued...)

## C.     The United States Is Immune From Suit Regarding Documents Issued By the European Commission and Council for the European Union

Plaintiffs raise claims against all defendants based upon the "Precautionary Principle" adopted by the Council for the European Union ("EU"), and the "Science and Society Action Plan," of the European Commission.[13]  Pls.' Compl. ¶¶ 23-25; see Pls.' Leggett Aff. ¶¶ 4, 8-12, 15; see also id. ¶¶ 13, 14 (discussing other European Commission documents).  Because those documents have not been incorporated into domestic law, the United States has not waived its immunity to suit for such claims.   See Comm. of U.S. Citizens Living in Nicaragua v. Reagan, 859 F.2d 929, 943 (D.C. Cir. 1988) (rejecting argument that the Administrative Procedure Act ("APA") provided jurisdiction for alleged violations of the United Nations charter).  The Court therefore lacks jurisdiction and should dismiss those claims as against Federal Defendants.

––––––––––––––––––––

[12]/(...continued)
Decl. ¶ 31; id., Attach. 15.

[13]/The European Commission, which is the executive and administrative body of the European Communities, exercises responsibility over the wide range of subject areas covered by the EU treaty.  See Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 250 (2004).  The Council of the EU is the main decisionmaking body of the EU.  See http://www.consilium.europa.eu/cms3_fo/showPage.asp?id=242&lang=en&mode=g (last visited June 20, 2008).

The United States and its agencies are immune from legal action by virtue of sovereign immunity.  See United States v. Sherwood, 312 U.S. 584, 586 (1941) ("The United States, as sovereign, is immune from suit save as it consents to be sued"); see also United States v. Mitchell, 463 U.S. 206, 212 (1983) (the government's consent to suit is a "prerequisite for jurisdiction").  Although Congress may waive the government's immunity, that waiver must be express, and it must be strictly construed in favor of the United States.  See United States v. Nordic Village Inc., 503 U.S. 30, 34 (1992); see also Hodge v. Dalton, 107 F.3d 705, 707 (9th Cir. 1997).

Plaintiffs do not point to any statute that would waive the United States' immunity to suit for claims involving the type of documents involved here.  The APA, which would ordinarily provide Plaintiffs with judicial review of their NEPA claims, does not provide for review of anything other than domestic law.  See Comm. of U.S. Citizens Living in Nicaragua, 859 F.2d at 943 ("[T]he APA does not grant judicial review of agencies' compliance with a legal norm that is not otherwise an operative part of domestic law.").[14]  Because Plaintiffs do not

---

[14]Plaintiffs' complaint and the affidavits filed therewith do not contain anything demonstrating that the documents upon which Plaintiffs rely constitute international law--either through treaties or customary law--that is binding upon the United States.  Regardless, other statutes by which claims under international

(continued...)

point to any other statute that would provide jurisdiction, Plaintiffs' claims

regarding documents issued by European entities must be dismissed.[15]

## II. FEDERAL DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS REGARDING CONSTRUCTION OF THE COLLIDER BECAUSE SUCH CLAIMS ARE TIME-BARRED

Insofar as Plaintiffs challenge Federal Defendants' financing for the

construction of a small portion of the Collider, those claims are time-barred.  Civil

actions against the United States, including actions under NEPA, are subject to the

statute of limitations in 28 U.S.C. § 2401(a).  See Sierra Club v. Penfold, 857 F.2d

---

[14]/(...continued)
law have been asserted against private parties do not allow such claims to be
brought against the United States.  See, e.g., Koohi v. United States, 976 F.2d
1328, 1332-33 n.4 (9th Cir. 1992) (Alien Tort Claims Act did not waive sovereign
immunity);  Industria Panificadora, S.A. v. United States, 957 F.2d 886, 886 (D.C.
Cir.1992) (per curiam) (same); see also United States v. Spelar, 338 U.S. 217, 221
(1949) (explaining that in enacting the Federal Tort Claims Act, Congress was
"unwilling to subject the United States to liabilities depending upon the laws of a
foreign power").

[15]/Plaintiffs in their Scheduling Conference Statement of June 13, 2008, argue that
the violation of "EU environmental standards" would, a fortiori, be a violation of
NEPA.  (Doc. No. 9) at 2.  NEPA claims, however, must be reviewed under the
strictures of the APA.  See Ashley Creek, 420 F.3d at 939 ("Because NEPA does
not provide for a private right of action, plaintiffs challenging an agency action
based on NEPA must do so under the Administrative Procedure Act.") (internal
citation omitted).  The APA does not allow suits except based upon principles of
domestic law.  See Comm. of U.S. Citizens Living in Nicaragua, 859 F.2d at 943.
Accordingly, Plaintiffs' claims are barred.

1307, 1315 (9th Cir. 1988).  Under 28 U.S.C. § 2401(a), a cause of action must be

brought within six years of when it first accrues, which under the APA generally

occurs at the time of final agency action.  Sierra Club v. Slater, 120 F.3d 623, 631

(6th Cir.1997); see also Wind River Min'g Corp. v. United States, 946 F.2d 710,

716 (9th Cir. 1991) (cause of action accrued "upon completion of the

administrative proceedings") (citation omitted).

Plaintiffs challenge Federal Defendants' decision to provide assistance for

the Collider.  Federal Defendants provided two main forms of assistance:

contributions toward construction of a small portion of the Collider, see Strauss

Decl. ¶¶ 14, 21, 22; Pripstein Decl. ¶¶ 9(a), 9(b); and grants of funds for research

that will be conducted at the Collider once it becomes operational.  See Strauss

Decl. ¶¶ 24, 25; Pripstein Decl. ¶¶ 10(a), 10(b).[16]  NSF entered into cooperative

agreements in 1999 that awarded grants to Northeastern and Columbia

Universities to contribute toward construction of the CMS and ATLAS detectors,

respectively.  See Pripstein Decl. ¶¶ 9(a), 9(b); see also id., Attachs. B, C.  DOE

began providing funds for constructing the accelerator components and Detectors

_____

[16]Between fiscal year ("FY") 2003 and FY 2006, NSF also provided funds--all of
which have been disbursed and spent--for the testing and preparation of the
Detectors for operation.  See Pripstein Decl. ¶ 10.  To be clear, Federal Defendants
contend that challenges only to the *construction* of the Collider are time-barred.

33

in 1998 through modifications of its management and operations contracts with

several national laboratories.  <u>See</u> Strauss Decl. ¶¶ 18, 19.

An agency's decision to award funds is a final agency action.  <u>See</u>

<u>Rattlesnake Coal.</u>, 509 F.3d at 1104 (final agency action occurs when an agency

"has reviewed a grant application and decided to disburse the funds").  Plaintiffs'

cause of action against Federal Defendants' support for construction of the

Collider therefore began to accrue not later than 1999 for NSF and 1998 for DOE.

<u>See</u> <u>Slater</u>, 120 F.3d at 631; <u>Wind River</u>, 946 F.2d at 716.

Plaintiffs' suit was not filed until March 2008--more than eight years after

either NSF or DOE began funding the construction of the Magnets and Detectors.

<u>See</u> Strauss Decl. ¶ 18; Pripstein Decl. ¶¶ 9(a), 9(b).  Because the suit falls outside

the six-year limitations period, Plaintiffs' claims are time-barred under 28 U.S.C.

§ 2401(a).  <u>See</u> <u>Penfold</u>, 857 F.2d at 1315.

## III.   "FERMILAB" SHOULD BE DISMISSED AS A DEFENDANT BECAUSE IT LACKS THE CAPACITY TO BE SUED

Plaintiffs name "Fermilab" as a defendant.  The FNAL, which is commonly

known as "Fermilab," is not a proper defendant because it is merely a DOE-owned

laboratory, not a separate legal entity.  <u>See</u> Livengood Decl. ¶ 5.  Because the

FNAL is simply a collection of federal buildings and other facilities and not a

34

separate legal entity, it should be dismissed as a party. See Local 73, Serv. Employees Intl. Union, Civ. No. 05-C-2772, Minute Order (N.D. Ill. Mar. 10, 2006) (attached hereto as Ex. I); see also Coufal, 2000 WL 1130063, at *1 n.3; Girard v. Donald W. Wyatt Detention Facility Inc., 50 Fed. Appx. 5 (1st Cir. 2002) (dismissing detention facility as a party); McKeever v. Anderson, No. 1:07-cv-632, 2008 WL 937846, at *4 (W.D. Mich. April 7, 2008) (dismissing county correctional facility as a defendant); Rousseau v. St. Peter Regional Treatment Ctr., No. 07-4823(DSD/JSM), 2008 WL 227690, at *2 (D. Minn. Jan. 25, 2008) (same with regard to state treatment center).

The FNAL is owned by DOE, which makes all the decisions to approve the major work done there. See Livengood Decl. ¶ 4. The FNAL is operated by a private contractor. See id. ¶ 3.[17] In this case, while some of the construction of

---

[17]It is unclear whether by naming "Fermilab," Plaintiffs intended to name as a defendant the private contractor that operates the FNAL under an agreement with DOE. Even if Plaintiffs were to amend their complaint to name the private contractor, such an amendment would be futile because a private party is not an "agency" within the meaning of the APA. See Nat'l Wildlife Fed'n v. Espy, 45 F.3d 1337, 1344 (9th Cir.1995) (holding that non-agency defendants were properly joined as indispensable parties under Rule 19, but recognizing that APA cause of action could not stand against them); accord, Sierra Club v. Hodel, 848 F.2d 1068, 1077 (10th Cir.1988) ("We know of no cases explicitly permitting a private suit under [5 U.S.C.] § 702 against a nonagency defendant . . . . ") overruled on other grounds by Village of Los Ranchos De Albuquerque v. Marsh, 956 F.2d 970 (10th Cir.1992); see also Gilmore v. U.S. Dep't of Energy, 4 F.
(continued...)

the Collider occurred at the FNAL, the decisions to undertake that construction

were made by officials within DOE.  <u>See</u> Livengood Decl. ¶ 4; <u>see also</u> Strauss

Decl. ¶¶ 18, 19.  Because DOE is already a party to this lawsuit, Plaintiffs would

not be prejudiced by Fermilab's dismissal.

<u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Federal Defendants' motion

and dismiss Plaintiffs' Complaint.

Respectfully submitted this 24th day of June 2008.

                              Respectfully submitted,

                              EDWARD H. KUBO, JR.  (2499)
                              United States Attorney
                              District of Hawaii
                              LAWRENCE L. TONG (3040)
                              DERRICK K. WATSON
                              (Cal. Bar #154427)
                              Assistant United States Attorneys
                              District of Hawaii

                              RONALD J. TENPAS
                              Assistant Attorney General
                              Env't & Natural Resources Div.

---

[17]/(...continued)
Supp. 2d 912, 920 (N.D. Cal. 1998) (company that contracted with DOE to operate
national laboratory was not a "government agency," for purposes of Freedom of
Information Act).

36

Dated:  June 24, 2008

   /s/ Brian C. Toth
BRIAN C. TOTH
Env't & Natural Resources Div.
United States Department of Justice
Washington, D.C.
ANDREW A. SMITH
Trial Attorney
United States Department of Justice
Environment and Natural Resources
     Division
c/o U.S. Attorneys Office
P.O. Box 607
Albuquerque, New Mexico 87103
Telephone:  (505) 224-1468
Facsimile:  (505) 346-7205
E-mail:  andrew.smith@usdoj.gov

*Of Counsel*:

Caroline M. Blanco
Assistant General Counsel
Office of the General Counsel
National Science Foundation
Arlington, VA

Steve Dove
Attorney
Office of the General Counsel
U.S. Department of Energy
Washington, D.C.

Attorneys for Defendants
U.S. Department of Energy and
National Science Foundation

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.5</u>

Pursuant to LR 7.5(e), I hereby certify that this brief contains 8,215 words, not counting the case caption, table of contents, table of authorities, table of exhibits, list of acronyms, signature block, certificate of compliance with local rule 7.5, or the certificate of service.  I further state that I relied upon WordPerfect word processing software to obtain the foregoing word count.

Dated:  June 24, 2008       <u>   /s/ Brian C. Toth                    </u>
             BRIAN C. TOTH
             Trial Attorney
             Natural Resources Section
             Env't & Natural Resources Div.
             United States Department of Justice

             Attorneys for Defendants
             U.S. Department of Energy and
             National Science Foundation

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on June 24, 2008, by the methods of service noted below, a true and correct copy of the foregoing  FEDERAL DEFENDANTS' MEMORANDUM IN SUPPORT OF COMBINED MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT and attached exhibits were served on the following at their last known addresses:

Served by first-class United States mail, postage prepaid:

> LUIS SANCHO
> P.O. Box 411
> Honomu, Hawaii 96728
>
> WALTER L. WAGNER
> P.O. Box 881
> Pepeekeo, Hawaii 96783

Dated:  June 24, 2008                                    /s/ Brian C. Toth
                                                       BRIAN C. TOTH
                                                       Trial Attorney
                                                       Natural Resources Section
                                                       Env't & Natural Resources Div.
                                                       United States Department of Justice

                                                       Attorneys for Defendants
                                                       U.S. Department of Energy,
                                                       National Science Foundation, and
                                                       Fermilab