# FEDERAL DEFENDANTS' EXHIBIT F

<u>Wagner v. U.S. Dep't of Energy</u>

Civil No. 08-00136-HG-KSC (D. Haw.)

Walter L. Wagner
PO Box 411
Honomu, HI 96728
808 964-5535

DOLINGER

08 CIV. 1656

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

--ooOoo--

| | |
|---|---|
| Walter L. Wagner, ) | |
| ) | |
| Plaintiff ) | Case No.: |
| ) | |
| vs. ) | |
| ) | **COMPLAINT** |
| Brookhaven Science Associates, LLC. ) | |
| ) | |
| Defendant ) | |
| ) | |

I

JURISDICTION

Plaintiff Walter L. Wagner is a resident of the State of Hawaii.

Defendant Brookhaven Science Associates, LLC is a not-for-profit limited liability company organized under the laws of the State of Delaware, but operating at Brookhaven National Laboratory in the State of New York.

The amount in controversy exceeds the jurisdiction of this Court.

II

STATEMENT OF FACTS

Defendant Brookhaven Science Associates, LLC (hereinafter Contractor) is the designated contractor to execute Contract No. DE-AC02-98CH10866, between the U.S. Department of Energy and the Contractor, commencing on January 5, 1998.

Under the terms of said contract, Article 4, Statement of Work, paragraph (a), the Contractor shall provide the intellectual leadership and management expertise necessary and appropriate to manage, operate and staff the Brookhaven National Laboratory (hereinafter BNL, or the Laboratory); to accomplish the missions assigned by the Department of Energy to the Laboratory; and to perform all other work described in the Statement of Work.

Under the terms of said contract, the defendant has designed and built, and are now ready to test, a certain piece of equipment known by the acronym as the RHIC (Relativistic Heavy Ion Collider) device.

Said RHIC (pronounced 'Rick') device has been designed and built for the purpose of accelerating Gold ions to unprecedented speeds, and colliding them together head-on, in an attempt to create a "Quark Gluon Plasma", which has never before been created by the hand of man.

III

STATEMENT OF CASE

Prior to the course of construction, and in conjunction with the design effort of the RHIC, defendant was required to file an Environmental Impact Statement (EIS) under the provisions of the National Environmental Policy Act of 1969 (NEPA), Title 40, Code of

2

Federal Regulations (CFR). In particular, under 40 CFR sections 6.104, 6.105, and parts 1500 et seq., defendant was required to disclose all potentially adverse consequences of the RHIC device, hold public hearings thereon, and otherwise notify the public of the potential for adverse effects, so that a benefits-versus-detriments balancing could reasonably be performed, to determine whether to pursue the project.

Numerous scientists have theorized as to what might be born from a "quark gluon plasma", as contemplated to be created at the RHIC. The vast majority of theories point to the creation of a novel kind of atom, called a "strangelet" atom, which would likely be initially very short-lived (i.e. it would undergo a radioactive decay, and then revert back into normal atoms). Numerous searches for said "strangelet" atoms have been undertaken previously at other accelerators, but none have been found, almost certainly because they were not capable of creating a "quark gluon plasma". Some of said theories have shown that certain types of said "strangelet" atoms potentially creatable by the RHIC would have the property of undergoing an unending fusion reaction with normal atoms, creating an ever larger and growing "strangelet" atom, with the result being that, should this occur on Earth, the planet would be consumed and turned into one large "strangelet" atom.

During the middle of 1999, at the strong request of plaintiff herein, the defendant herein commissioned a study of such theoretical possibilities, entitled: "Review of Speculative 'Disaster Scenarios' at RHIC". The report clarifies what an unending fusion reaction would be like, by stating on pages 18-19:   "What is the scenario in which strangelet production at RHIC leads to catastrophe? The culprit would be a ... metastable negatively charged strangelet produced at RHIC. ... Once produced, a negative

metastable strangelet would be captured quickly by an ordinary nucleus in the environment. Cascading quickly down into the lowest Bohr atom, it would react with the nucleus, and absorb several nucleons forming a larger strangelet. The reaction would be exothermic. [plaintiff's note: exothermic means it would give off energy] ... This process would continue until all available material had been converted to strange matter. We know of no barrier to the rapid growth of a dangerous strangelet."

Subsequently, in the course of the 'Review' document, an attempt is made to disprove the above scenario by using a 'cosmic ray' argument which has since been shown by other scientists to be completely false. In fact, no such showing has yet been made that the above-referenced scenario cannot happen.

At no time were any of the above potential adverse consequences of the RHIC disclosed in any EIS, as otherwise required by law. No public hearings thereon have ever been held, and very few scientists have even been apprised either of the above adverse scenario, or of the failure of the 'cosmic ray' argument to disprove the adverse scenario.

Notwithstanding the fact that the RHIC has not been proven to be safe, and that the adverse scenario of the above has not been disproved, the defendant still plans to test the RHIC device, believing instead that the risk is "low ". No calculations by the defendant have been made to show how "low" the risk actually is, and based on a lack of information upon which to base such calculations, most statisticians would have to conclude that the risk is 50% (i.e. a 50-50 chance of occurrence).

IV

CONCLUSION

Plaintiff herein stands to suffer irreparable harm should defendant herein test the RHIC device, if it has not been proved safe.

The defendant herein has failed to comply with the requirements of NEPA.

The only way to protect, not only the plaintiff herein, but the integrity of the NEPA regulations, is to compel the defendant to comply with NEPA as it pertains to all potential adverse effects by compelling defendant to file an EIS that addresses the "strangelet" issue, hold public hearings thereon, etc. **prior** to their operation of the RHIC in a collision mode.

WHEREFORE, it is respectfully requested that this Court issued the attached Temporary Restraining Order barring defendant from testing the RHIC until they have come into compliance with the NEPA requirements.

DATED: March 1, 2000

_____
Walter L. Wagner