ORIGINAL

Luis Sancho
Walter L. Wagner
PO Box 411
Honomu, HI  96728
808-964-5535
*pro se*

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

AUG 05 2008

at ___ o'clock and ___ min. ___ M.
SUE BEITIA, CLERK

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF HAWAII

### --ooOoo--

| | |
|---|---|
| LUIS SANCHO, et al., ) | Civil No.  CV08-00136 HG |
| ) | |
| Plaintiffs, ) | **JUDGMENT BY DEFAULT** |
| ) | **AGAINST DEFENDANT CERN** |
| vs. ) | [proposed] |
| ) | |
| US DEPARTMENT OF ENERGY, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | Hon. Helen Gillmor |
| _____ ) | |

## JUDGMENT BY DEFAULT AGAINST DEFENDANT CERN

I

## Findings of Fact

The Court, having read the Complaint on file herein and the Affidavits filed by the plaintiffs and the government defendants, finds as follows:

1.      Defendant CERN is engaged in ongoing business with its partner, the government defendants, which have monetary allocations for Fiscal Year 2008 and Fiscal Year 2009 budgeted for CERN's LHC project with expectations of continuing the budgeting that has been ongoing for the previous several years.

2.      Defendant CERN and the government defendants have an ongoing partnership Agreement whereby the government defendants obtain a seat on the CERN governing council allowing them to participate in the major decisions of the LHC with an equal voice of the other members.

3.      Neither defendant CERN nor the government defendants have engaged in any form of hearings or other meetings in which the plaintiffs or members of the public would have been allowed to attend so as to comply with requirements for Environmental Assessment [EA] findings, Findings of No Significant Impact [FNSI], or Environmental Impact Statements [EIS], or any other NEPA requirements or European Commission requirements pertaining to the Precautionary Principle.

4.     The LHC project jointly developed by defendant CERN and the government defendants has identified high-risk adverse scenarios which it has detailed in its LSAG [LHC Safety Assessement Group] Report that was only recently released, and prepared without any input from the scientific community as a whole, or from any members of the general public, or from plaintiffs.

5.     Those high-risk adverse scenarios include, but are not limited to, the fact that defendant CERN and the government defendants propose to create, via their LHC machine, new forms of matter never before seen on Earth.  These proposals to create new forms of matter include proposals to create a novel type of atomic nucleus [called a "strangelet"] which would be different from all atoms normally found in our solar system, which consist of a nucleus of only 'up' and 'down' quarks.  Rather, this novel type of atomic nucleus sought to be manufactured by defendant CERN and the government defendants would consist of 'up', 'down' and 'strange' quarks, and is believed to be more stable than a normal atomic nucleus, once created.

6.     The proposal to create strangelets ignores the risk that a strangelet, according to many credible theories, would be capable of engaging in a non-stop fusion reaction in which it would eventually fuse all

of the normal atoms of earth [and all life on earth] to itself, converting earth into one large strange atom, or 'strange star' due to its size and heat. Rather, this negative aspect is ignored in the LSAG Report, in which the report instead attempts to equate nature's mode of high-energy collisions of single protons striking a Lead nucleus and tunneling through it, for example on the moon, which is vastly different than the LHC's mode of high-energy collisions of Lead nuclei striking Lead nuclei for the stated purpose of liberating [de-confining] all of the quarks already present, and generating many strange quarks, in an effort to create a strangelet.

7.     Defendant CERN's and the government defendants' proposal is not limited to efforts to create novel strangelets, but includes efforts to create miniature black holes, small cousins of the massive black holes that are found in the centers of galaxies, and are also believed to be formed when large stars collapse when they run out of fuel to sustain their fusion fires.

8.     The evidence shows that the LSAG Report also inadequately addresses the risks associated with creating miniature black holes on Earth.

9.    The evidence also shows that the LSAG Report is biased towards defendant CERN in that it was prepared by a committee consisting entirely of CERN employees or former employees.

10.    The evidence further shows that the LSAG Report acknowledges that plaintiffs herein have been correct in their previous critiques of earlier faulty safety reports previously relied upon by defendant CERN in support of their justification to commission the LHC.

II

## Conclusions of Law

1.    Defendant CERN has defaulted and failed to file an answer or other responsive pleading.

2.    A clerical entry of default has been entered against defendant CERN, and the allegations of fact found within the complaint, which are deemed herein to be true with respect to defendant CERN, have additionally been established by way of the sworn affidavits attached both to the complaint, and to the motion for entry of default judgment.

3.    The LHC poses a high risk of serious adverse consequence, and further review of its safety by the scientific community is warranted before the LHC should commence operation, if ever.

4.    Such review is likely to reveal, as plaintiffs and their affiants have stated, that the current LSAG Safety report is faulty, and there is no current proof of safety.  Such review is likely to also produce suggestions as to scientific experiments that could and should be undertaken first, before operation of the LHC, which could conceivably result in the needed empirical evidence to establish safety, if such exists.   It could also conceivably result in the proof that the LHC is not safe to operate.

5.    None of the required NEPA hearings or reviews have been held by defendant CERN, and the plaintiffs have been precluded from presenting their findings at such hearings and reviews.

III

## Judgment by Default

Judgment by default is herewith entered as against defendant CERN only.  Defendant CERN is obligated under NEPA, etc., to provide plaintiffs with either an EIS, or a FONSI EA, addressing the safety issues that are and have been known to defendants for several years.

Additionally, plaintiffs are to be afforded a reasonable amount of time in which to respond appropriately to either the EIS or FONSI EA, before defendant CERN would be allowed to operate its LHC.

Because plaintiffs have been required to spend an inordinate amount of time and resources in defending against defendants' failures to properly address the issues raised by plaintiffs and others, they are awarded their costs of preparing for suit, as well as attorney's fees and litigation costs after filing of suit.

Accordingly, it is ordered that:

a)   A preliminary injunction is hereby issued enjoining defendant CERN from operating the LHC until after it has completed either a FONSI or EIS, as appropriate, and it is to be in effect until such time that such FONSI or EIS has been reviewed by plaintiffs or the court and approved for operation;

b)   A permanent injunction is issued enjoining defendant CERN from operating the LHC until such time that the LHC can be proven to be reasonably safe within industry standards; and

c)   Plaintiffs are awarded their costs of suit.

Dated:      August ____, 2008

_____
Hon. Helen Gilmor

7