Luis Sancho
Walter L. Wagner
PO Box 411
Honomu, HI 96728
808-964-5535
*pro se*

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

AUG 05 2008

at ___ o'clock and 32 min. ___ M.
SUE BEITIA, CLERK

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF HAWAII

--ooOoo--

| | |
|---|---|
| LUIS SANCHO, et al., | Civil No. CV08-00136 HG |
| Plaintiffs, | **MEMORANDUM OF LAW IN SUPPORT OF PERMANENT INJUNCTION** |
| vs. | |
| US DEPARTMENT OF ENERGY, et al., | |
| Defendants. | Hon. Helen Gillmor |

MEMORANDUM OF LAW IN SUPPORT OF
<u>PERMANENT INJUNCTION</u>

Plaintiffs respectfully submit the following memorandum of points and authorities in support of their request for entry of a permanent injunction against defaulting defendant CERN:

I

## Defendant CERN Default Supports Injunction re CERN

A judgment by default is based on a party's failure or omission to take a necessary step in a court action within the proper time. The purpose of the entry of a default or a default judgment is to:

- keep the dockets current[1].

- expedite the disposal of causes[2].

- speed litigation to a conclusion and to prevent a dilatory defendant from impeding the plaintiff's claim.[3]

The entry of the clerical default does not constitute a judgment but is rather an order precluding the defaulting party from making any further defense in the case as far as its liability is concerned.[4] The clerical default is simply an interlocutory order that in itself determines no rights or remedies, whereas the default judgment is a final judgment that terminates

---

[1] Mieszkowski v. Norville, 61 Ill. App. 2d 289, 209 N.E.2d 358 (2d Dist. 1965)
[2] Rogers v. Lyle Adjustment Co., 70 N.M. 209, 372 P.2d 797 (1962)
[3] Tucker v. Fireston Tire and Rubber Co., 552 So.2d 1178 (Fla. Dist. Ct. App. 2d Dist. 1989)
[4] Culetsu v. Dix, 149 Conn. 456, 181 A.2d 116 (1962)

the litigation against that party.[5] The Federal Rules of Civil Procedure, Rule 55, provides for entry of default by the clerk, and for a judgment of default to be entered by the court as sought herein [FRCP Rule 55(b)2].

Although a judgment upon default cannot extend beyond the cause of action stated, it may go to the full extent of the complaint.[6] The Federal rules and some state rules provide that notice of taking default is not required where the defaulting party has not made an appearance. Notwithstanding the lack of notice allowance, plaintiffs herein have noticed all defendants of their intention to obtain entry of a judgment by default.

Generally, upon default, all the material allegations of the plaintiff's complaint are to be taken as true with respect to the defaulting defendant, so that a judgment by default can be properly rendered without proof of the plaintiff's claims[7], except as may be required to establish damages. Courts generally hold that it is unnecessary to take proof of liability of the defaulting defendant.[8]

Nevertheless, because a minority of courts requires a plaintiff to establish the elements of a prima facie case with competent evidence,

---

[5] Hertz v. Berzanske, 704 P.2d 767 (Alaska 1985)
[6] Strickland v. O'Rear, 134 Ind. App. 247, 176 N.E.2d 902 (Div. 1 1961)
[7] Coffee v. Keeton, 248 Ala. 19, 26 Sp. 2d 80 (1946)
[8] Southern Arizona School for Boys, Inc. v. Chery, 119 Ariz. 277, 580 P.2d 738 (Ct. App. Div. 2 1978)

plaintiffs herein submit additional affidavit in support of its claim, in addition to the affidavits already on file herein.

A default has been held to operate as an admission of the truth of all the material allegations set forth in the complaint[9]. A default has also been held to operate as an admission of the cause of action[10], so as to be tantamount to an admission that the plaintiff is entitled to the judgment requested.[11]

Courts are permitted to enjoin acts occurring outside their territorial jurisdiction when the injunctive relief is ancillary to an underlying proceeding over which the court unquestionably has jurisdiction.[12] Thus, a court having jurisdiction of the parties may enjoin the actions of the parties in another state or country.[13] A federal court, in exercising its equity powers, may properly enjoin parties properly before it, with respect to their conduct or activities outside of its territorial jurisdiction.[14]

Further, defendant CERN did not have a basis to seek dismissal of the instant suit on the ground of *forum non conveniens*. If the alternative

---

[9] In re Naemi, 128 B.R. 273 (Bankr. S.D. Cal. 1991)
[10] Clark v. Collins, 213 Ark. 386, 210 S.W.2d 505 (1948)
[11] Ramey v. Hewitt, 188 A.2d 350, 15 A.L.R.3d 582 (D.C. 1963)
[12] Kessel v. Leavitt, 204 W. Va. 95, 511 S.E.2d 720 (1998), cert. denied, 119 S.Ct. 1035, 143 L.Ed. 2d 43 (U.S. 1999)
[13] Pines v. Tomson, 160 Cal. App. 3d 370, 206 Cal. Rptr. 866 (2d Diust. 1984)

forum [Geneva] would not allow the litigation, or the foreign nation's law is otherwise deficient, the doctrine of *forum non conveniens* is not applicable.[15] Likewise, if the essential testimonial evidence regarding liability, causation and damages is not available in the foreign jurisdiction, the doctrine of *forum non conveniens* is again not applicable.[16]

Further, a defendant essentially waives the right to raise the issue of *forum non conveniens* when it defaults, in that it fails to raise the issue in a timely manner, in that the default precludes further procedural action on the defendant's part.[17]

Finally, defendant CERN is estopped from asserting that the jurisdiction over the other defendants [DOE, FERMILAB, NSF; aka government defendants] does not apply to them. Jurisdiction over the government defendants is clearly proper in Honolulu as admitted by those

---

[14] Steele v. Bulova Watch Co., 344 U.S. 280, 73 S. Ct. 252, 97 L. Ed. 319, 95 U.S.P.Q. (BNA) 391 (1952)

[15] Piper Aircraft Co. v. Reyno, 454 U.S. 235, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981), Ismail v. Ismail, 702 S.W.2d 216 (Tex. App. Houston 1st Dist. 1985), writ refused n.r.e., (June 11, 1986), Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A., 339 U.S. 694, 70 S. Ct. 861, 94 L. Ed. 1206, 19 A.L.R.2d 630 (1950), Magnecomp Corp. v. Athene Co., 209 Cal. App. 3d 526, 257 Cal. Rptr. 278 (2d Dist. 1989), In re Marriage of Kimura, 471 N.W.2d 869 (Iowa 1991) (no comparable cause of action on same basis as no fault divorce law).

[16] Kerr v. Inamed Corp., 51 Fed. Appx. 718 (9th Cir. 2002)

[17] Wilburn v. Wilburn, 192 A.2d 797, 9 A.L.R.3d 538 (D.C. 1963) (doctrine raised too late if made at close of trial), Bock v. Rockwell Mfg. Co., Inc., 151 A.D.2d 629, 543 N.Y.S.2d 89 (2d Dep't 1989) (laches applied where the defendant participated in the action for 15 months before making a motion to dismiss).

defendants. Likewise, jurisdiction over CERN is also clearly proper in Honolulu due to the partnership relationship between CERN and the government defendants. They are, accordingly, estopped from asserting either the doctrine of *forum non conveniens*, or other lack of jurisdiction over them.

While a partnership relationship has been expressed variously by the courts, it generally includes an association of persons or entities to combine property, money, effects, skill, and knowledge under a contract or agreement to carry out a lawful enterprise[18]. Here, it is quite clear that CERN has a partnership relationship with the government defendants, in which the government defendants provide monies, materials and expertise, pursuant to a long-standing Agreement, and obtain a seat on the CERN governing board to <u>actively participate in the major decisions</u> of CERN.

Accordingly, in that CERN has defaulted, this Court is obligated to accept as true the material allegations of the complaint with respect to defendant CERN, and issue the injunctive order demanded in the complaint.

II

## Factual Evidence Supports Injunctive Order re CERN

Even if this Court were to take the minority view of courts that a plaintiff is still obligated to provide evidence in support of the allegations of the complaint in order to support issuance of a judgment by default, such evidence is already on file with this court in the form of the existing sworn affidavits, as well as the accompanying sworn affidavit(s).

Specifically, those facts present a chilling scenario of indifference to normal procedures for protection of the general public, as well as plaintiffs herein.

While this Court is obligated to accept as true the material allegations of the complaint with respect to the defendant CERN, plaintiffs have augmented the Complaint with factual affidavits filed in conjunction therewith, as well as in conjunction with the instant motion, which fully support the allegations of the complaint.

Those facts contained in the affidavits are summarized as follows:

1. CERN is engaged in ongoing business with its partner, the government defendants, which have monetary allocations for Fiscal Year 2008 and Fiscal Year 2009 budgeted for CERN's LHC project with

---

[18] American Jurisprudence, 2d, Partnerships, sections 89 to 98

expectations of continuing the budgeting that has been ongoing for the previous several years;

2. CERN and the government defendants have an ongoing partnership Agreement whereby the government defendants obtain a seat on the CERN governing council allowing them to participate in the major decisions of the LHC with an equal voice of the other members;

3. Neither CERN nor the government defendants have engaged in any form of hearings or other meetings in which the plaintiffs or members of the public would have been allowed to attend so as to comply with requirements for Environmental Assessment [EA] findings, Findings of No Significant Impact [FNSI], or Environmental Impact Statements [EIS], or any other NEPA requirements or European Commission requirements pertaining to the Precautionary Principle;

4. The LHC project has identified high-risk adverse scenarios which it has detailed in its LSAG [LHC Safety Assessement Group] Report that was only recently released, and prepared without any input from the scientific community as a whole, or from any members of the general public, or from plaintiffs;

5. Those high-risk adverse scenarios include, but are not limited to, the fact that CERN proposes to create, via its LHC machine, new forms

of matter never before seen on Earth. These proposals to create new forms of matter include proposals to create a novel type of atomic nucleus [called a "strangelet"] which would be different from all atoms normally found in our solar system, which consist of a nucleus of only 'up' and 'down' quarks. Rather, this novel type of atomic nucleus sought to be manufactured by CERN would consist of 'up', 'down' and 'strange' quarks, and is believed to be more stable than a normal atomic nucleus, once created.

6. The proposal to create strangelets ignores the risk that a strangelet, according to many credible theories, would be capable of engaging in a non-stop fusion reaction in which it would eventually fuse all of the normal atoms of earth [and all life on earth] to itself, converting earth into one large strange atom, or 'strange star' [due to its large size and heat]. Rather, this negative aspect is ignored in the LSAG Report, in which the report instead attempts to equate nature's mode of high-energy collisions of single protons striking a Lead nucleus and tunneling through it, for example on the moon, which is vastly different than the LHC's mode of high-energy collisions of Lead nuclei striking Lead nuclei for the stated purpose of liberating [de-confining] all of the quarks already present, and generating many strange quarks, in an effort to create a strangelet.

7. Defendant CERN's proposal is not limited to efforts to create novel strangelets, but includes efforts to create miniature black holes, small cousins of the massive black holes that are found in the centers of galaxies, and are also believed to be formed when large stars collapse when they run out of fuel to sustain their fusion fires.

8. The evidence shows that the LSAG Report also inadequately addresses the risks associated with creating miniature black holes on Earth. The LSAG Report is currently undergoing critique before the scientific community, and that critiquing has revealed that its arguments that such miniature black holes would be safe are unfounded. In particular, serious flaws have been identified in the faulty reasoning that reached that conclusion.

9. The evidence also shows that the LSAG Report is biased towards defendant CERN in that it was prepared by a committee consisting entirely of CERN employees or former employees.

10. The evidence further shows that the LSAG Report acknowledges that plaintiffs herein have been correct in their previous critiques of earlier faulty safety reports previously relied upon by defendant CERN in support of their justification to commission the LHC.

III

## Conclusion

In conclusion, defendant CERN has defaulted and failed to file an answer or other responsive pleading, a clerical entry of default has been entered, and the allegations of fact found within the complaint with respect to defendant CERN have additionally been established by way of the sworn affidavits attached both to the complaint, and to the motion for entry of default judgment.

The LHC poses a high risk of serious adverse consequence, and further review of its safety by the scientific community is warranted before the LHC should commence operation, if ever. Such review is likely to reveal, as plaintiffs and their affiants have stated, that the current LSAG Safety report is faulty, and there is no current proof of safety. Such review is likely to also produce suggestions as to scientific experiments that could and should be undertaken first, before operation of the LHC, which could conceivably result in the needed empirical evidence to establish safety, if such exists. It could also conceivably result in the proof that the LHC is not safe to operate.

None of the required NEPA hearings or reviews have been held by defendant CERN, and the plaintiffs have been precluded from presenting their findings at such non-existent hearings and reviews.

WHEREFORE, it is respectfully requested that this Court enter its judgment by default as against defendant CERN only, and enter its Findings of Fact and Conclusions of Law with respect thereto.

Dated:   August 4, 2008

*Walter L. Wagner* (signature)

Walter L. Wagner

_____

Luis Sancho