ORIGINAL

Luis Sancho
Walter L. Wagner
PO Box 411
Honomu, HI  96728
808-964-5535
*pro se*

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

AUG 22 2008

at 11 o'clock and 22 min. A.M.
SUE BEITIA, CLERK

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF HAWAII

### --ooOoo--

| | |
|---|---|
| LUIS SANCHO, et al., ) | Civil No.  CV08-00136 HG |
| ) | |
| Plaintiffs, ) | **MEMORANDUM OF LAW** |
| ) | **IN OPPOSITION TO** |
| vs. ) | **"COMBINED MOTION TO** |
| ) | **DISMISS AND FOR SUMMARY** |
| US DEPARTMENT OF ENERGY, ) | **JUDGMENT"** |
| et al., ) | |
| ) | Date:      Sept. 2, 2008 |
| Defendants. ) | Time:     10:00 A.M. |
| _____ ) | Court:    Hon. Helen Gillmor |

MEMORANDUM OF LAW IN OPPOSITION TO
"COMBINED MOTION TO DISMISS AND FOR SUMMARY JUDGMENT"

## TABLE OF CONTENTS

I    Summary Judgment Inappropriate for Defendants ………….. 6

    1.   Summary Judgment Generally …………………………. 6

    2.   Summary Judgment Inapplicable Herein ……………….10

    3.   Discovery Incomplete ……………………………………… 12

II   Dismissal Inappropriate ……………………………………….15

    1.   Generally ……………………………………………………… 15

    2.   Plaintiffs Have Standing ………………………………….15

    3.   Plaintiff's Claims Are Not Moot …………………………. 18

    4.   The United States Is Not Immune ……………………… 21

    5.   Plaintiffs' Claims Are Not Time-Barred …………………. 23

III  Conclusion …………………………………………………….. 23

# TABLE OF AUTHORITIES

## FEDERAL CASES

Ashley Creek Phosphate Co. v. Norton,
  420 F.3d 934 (9th Cir. 2005) ............................................. 23

Brown v. Glover, 2000 UT 89, 16 P.3d 540 (Utah 2000) ...............9

Chemical Insecticide Corp. v. State, 108 N.H. 126,
  229 A.2d 167 (1967) ..................................................... 9

City State Bank v. Holstine, 260 Neb. 578,
  618 N.W.2d 704 (2000) ................................................. 7

Danielewicz v. Arnold,  137 Md. App. 601,
  769 A.2d 274 (2001) ..................................................... 6

Dixon v. Bhuiyan, 2000 OK 56, 10 P.3d 888,
  147 Ed. Law Rep. 1106 (Okla. 2000) ............................... 6

Dobson v. Harris, 352 N.C. 77, 530 S.E.2d 829 (2000) ............... 6, 8

Ecological Rights Found. v. Pac. Lumber Co.,
  230 F.3d 1141 99th Cir. 2000) ....................................... 17

Fisher v. Sun Underwriters Ins. Co. of New York,
  55 R.I. 175, 179 A. 702, 103 A.L.R. 1097 (1935) ................ 9

Gilchrist v. Trail King Industries, Inc., 2000 SD 67,
  612 N.W.2d 10 (S.D. 2000) ........................................... 9

Hodge v. Dalton, 107 F.3d 705 (9th Cir. 1997) ........................... 22

Hamilton v. Keystone Tankship Corp.,
  539 F.2d 684 (9th Cir. 1976) ....................................... 11

Ianelli v. Burger King Corp., 761 A.2d 417 (N.H. 2000) ................. 8

Manchester Memorial Hospital v. Whitney,
    6 Conn. Cir. Ct. 212, 269 A.2d 300
    (App. Div. 1969), petition denied,
    158 Conn. 667, 259 A.2d 648 (1969) ................................ 8

McWhirter Distributing Co., Inc. v. Texaco, Inc.,
    668 F.2d 511 (Emer. Ct. App. 1981) ............................... 8

National Life Ins. Co. v. Solomon, 529 F.2d 59
    (2d Cir. 1975) .................................................... 9

Norwood Morris Plan Co. v. McCarthy, 295 Mass. 597,
    4 N.E.2d 450, 107 A.L.R. 1215 (1936) ............................. 10

Nuclear Info. & Resource Serv. v.
    Nuclear Regulatory Comm'n,
    457 F.3d 941 (9th Cir. 2006) ................................... 18

Ormet Primary Aluminum Corp. v.
    Employers Ins. Of Wausau,
    88 Ohio St. 3d 292, 725 N.E.2d 646 (2000) ...................... 7

Overstreet v. Kentucky Cent. Life Ins. Co.,
    950 F.2d 931 (4th Cir. 1991) .................................... 8

Parmelee v. Chicago Eye Shield Co.,
    157 F.2d 582, 168 A.L.R. 1130 (C.C.A. 8th Cir. 1946) .......... 7

Rattlesnake Coal v. EPA, 509 F.3d 1095 (9th Cir. 2007) .............. 17

R.D. Reeder Lathing Co. v. Allen, 66 Cal.2d 373,
    57 Cal. Rptr. 841, 425 P.2d 785 (1967) ........................ 6

Schuck v. Montefiore Public School Dist. No. 1,
    2001 ND 93, 626 N.W.2d 698 (N.D. 2001) ........................ 6

Sengupta v. University of Alaska, 21 P.3d 1240,
    153 Ed. Law Rep. 384 (Alaska 2001) ............................... 9

U.S. v. Bosurgi, 530 F.2d 1105 (2d Cir. 1976) ............................ 8

## FEDERAL STAUTES and ACTS

Federal Rules of Civil Procedure, Rule 12(b) ............................ 15

Federal Rules of Civil Procedure, Rule 56 ................................. 6, 7

Federal Rules of Civil Procedure, Rule 56(b) ............................ 6

Federal Rules of Civil Procedure, Rule 56(f) ............................ 9

Title 28, United States Code, section 2401(a) ........................... 23

National Environmental Protection Act [NEPA] ........................ 10, 11, 12,
                                                                      14, 25, 16,
                                                                      17, 18, 22,
                                                                      23, 25, 26

Administrative Procedure Act [APA] ...................................... 22, 23, 26

## LAW ENCYCLOPEDIAS

73 Am Jur 2d, *Summary Judgment*, Section 8 .......................... 8

73 Am Jur 2d, *Summary Judgment*, Section 9 .......................... 8

73 Am Jur 2d, *Summary Judgment*, Section 39 ........................ 6

73 Am Jur 2d, *Summary Judgment*, Section 57 ........................ 10

I

## Summary Judgment Inappropriate for Defendants

1.   <u>Summary Judgment Generally</u>

The Federal Rules of Civil Procedure [FRCP], Rule 56 does allow for summary judgment, and under FRCP Rule 56(b), a defending party may so move.

A motion for summary judgment seeks a disposition of a controversy without a trial.[1]  The primary purpose of a summary judgment procedure is to determine whether there are any triable issues of fact requiring a formal trial on the merits,[2] rather than to decide factual disputes.[3]

Summary Judgment also promotes the search for undisputed material facts that can be applied in the judicial decision-making process.[4] The purpose of summary judgment is to eliminate trial in cases in which it is unnecessary and would only cause delay and expense.[5]  Summary judgment is also a useful device for unmasking frivolous claims and putting

---

[1] <u>Schuck v. Montefiore Public School Dist. No. 1</u>, 2001 ND 93, 626 N.W.2d 698 (N.D. 2001)
[2] <u>R.D. Reeder Lathing Co. v. Allen</u>, 66 Cal.2d 373, 57 Cal. Rptr. 841, 425 P.2d 785 (1967); <u>Danielewicz v. Arnold</u>,  137 Md. App. 601, 769 A.2d 274 (2001)
[3] <u>73 Am Jur 2d</u>, *Summary Judgment*, Section 39
[4] <u>Dixon v. Bhuiyan</u>, 2000 OK 56, 10 P.3d 888, 147 Ed. Law Rep. 1106 (Okla. 2000)
[5] <u>Dobson v. Harris</u>, 352 N.C. 77, 530 S.E.2d 829 (2000)

a swift end to meritless litigation[6] because it allows the court to move beyond the allegations in the pleadings and analyze the evidence to ascertain whether there is a need for a trial.[7]

The summary judgment procedure prescribed in FRCP Rule 56 is designed for the prompt disposition of actions in which there is no genuine issue regarding any material facts.  This rule contemplates an inquiry in advance of trial as to whether there is a genuine issue, and may be invoked for the purpose of striking sham defenses that obstruct a prompt determination of the truth.[8]

Because the practical result of applying the summary judgment remedy is to deprive the party against whom judgment is granted of a trial in the usual course, the remedy is a drastic one that should be used with great caution and only in those cases in which the justice of its application is clear.[9]  Although summary judgment saves time, effort, and expense by avoiding a full trial under certain circumstances, those savings may not be gained at the expense of denying a litigant the right of trial if there is a

---

[6] City State Bank v. Holstine, 260 Neb. 578, 618 N.W.2d 704 (2000)
[7] Ormet Primary Aluminum Corp. v. Employers Ins. Of Wausau, 88 Ohio St. 3d 292, 725 N.E.2d 646 (2000)
[8] Parmelee v. Chicago Eye Shield Co., 157 F.2d 582, 168 A.L.R. 1130 (C.C.A. 8th Cir. 1946)
[9] Chemical Insecticide Corp. v. State, 108 N.H. 126, 229 A.2d 167 (1967)

genuine issue of material fact to be litigated.[10]   Because a summary judgment proceeding is a drastic remedy, strict compliance with the applicable rule is required,[11] and this is so whether or not the opposing affidavits are sufficient.[12]

The nature of a controversy may render summary judgment inadvisable.  For example, a summary judgment should not be based on an indefinite factual foundation involving a welter of statutory or regulatory provisions, the application of which may depend on undeveloped facts.[13] There are three classes of litigation that are not usually suited for summary disposition:  negligence actions,[14] cases involving states of mind[15] such as motive, intent, consciousness, conscience, or subjective feelings and reactions,[16] and equitable actions seeking injunctive relief.[17]  In any case, if it is not perfectly plain that the action is within the scope of a summary

---

[10] Ianelli v. Burger King Corp., 761 A.2d 417 (N.H. 2000)
[11] U.S. v. Bosurgi, 530 F.2d 1105 (2d Cir. 1976)
[12] Manchester Memorial Hospital v. Whitney, 6 Conn. Cir. Ct. 212, 269 A.2d 300 (App. Div. 1969), petition denied, 158 Conn. 667, 259 A.2d 648 (1969).
[13] McWhirter Distributing Co., Inc. v. Texaco, Inc., 668 F.2d 511 (Emer. Ct. App. 1981)
[14] 73 Am Jur 2d, Summary Judgment, Section 8
[15] Overstreet v. Kentucky Cent. Life Ins. Co., 950 F.2d 931 (4th Cir. 1991)
[16] Dobson v. Harris, 352 N.C. 77, 530 S.E.2d 829 (2000)
[17] 73 Am Jur 2d, Summary Judgment, Section 9, Equitable actions

judgment statute or rule, a motion for summary judgment is improper and should be denied.[18]

Further, FRCP Rule 56(f) provides that, if it appears from the affidavits of a party opposing a motion for summary judgment that he cannot present by affidavit facts essential to justify his opposition to the motion, the court should refuse the application for judgment, or order a continuance so that the opponent can conduct discovery, or make such other order as is just.[19]  This provision is intended to provide an <u>additional safeguard against premature grants of summary judgment,</u>[20] and should be liberally construed.[21]

Yet still further, a court should refuse summary judgment or order a continuance pursuant to HRCP Rule 56(f) if the opposing party has not had an adequate opportunity to obtain and present materials in support of the opposition.[22]

---

[18] <u>Fisher v. Sun Underwriters Ins. Co. of New York</u>, 55 R.I. 175, 179 A. 702, 103 A.L.R. 1097 (1935)
[19] <u>Gilchrist v. Trail King Industries, Inc.</u>, 2000 SD 67, 612 N.W.2d 10 (S.D. 2000)
[20] <u>Sengupta v. University of Alaska</u>, 21 P.3d 1240, 153 Ed. Law Rep. 384 (Alaska 2001)
[21] <u>Brown v. Glover</u>, 2000 UT 89, 16 P.3d 540 (Utah 2000)
[22] <u>National Life Ins. Co. v. Solomon</u>, 529 F.2d 59 (2d Cir. 1975)

Finally, if the affidavits on the one side and on the other are directly opposed as to the facts shown, the case must go to trial.[23]  The court cannot weigh the sworn affidavits against each other and then grant summary judgment.[24]  Further, evidence that might be excluded at trial, as for example hearsay evidence included in an affidavit, may be used as a basis in ascertaining whether a triable issue exists, and may be utilized as the basis for denying summary judgment.[25]

2.      Summary Judgment Inapplicable Herein

The facts herein show that summary judgment is entirely inapplicable as against the plaintiffs.  Essentially, the facts boil down to two primary questions of fact:   1) Will the defendants create conditions at the LHC which could prove disastrous; and 2) have the defendants complied with NEPA requirements and other requirements for disclosure of those issues.

If there is any triable issue as to either of those facts, then summary judgment is inapplicable.  Both the defendants and the plaintiffs have presented sworn affidavits on those factual issues, and additionally alleged *amici* have sought to intervene, though not with sworn affidavits to elucidate the facts.   In addition, actual *amici curiae* have filed sworn

---

[23] Norwood Morris Plan Co. v. McCarthy, 295 Mass. 597, 4 N.E.2d 450, 107 A.L.R. 1215 (1936)
[24] 73 Am Jur 2d, *Summary Judgment*, Section 57, credibility of affiants

affidavits in support of plaintiffs, namely their sworn affidavits filed concurrently with the complaint and the plaintiffs' sworn affidavits.

In examining the affidavits, the court will note that there is a triable issue of material fact as to whether the LHC will likely produce disastrous waste products, as alleged by plaintiffs, or whether such outcome is "unlikely", as alleged by defendants, and in particular in the pleading by the purported *amici* in their brief they sought to file, attached as an Exhibit to the affidavit of Dr. Wagner in opposition to their obtaining leave to file.

Plaintiffs have presented evidence, by way of scientific articles and interviews, as well as by their own affidavits and the affidavits of the actual true *amici* [who actually filed affidavits] which shows a great likelihood that disastrous products would be produced by the LHC.   Conversely, defendants have filed affidavits that tend to show that such products are "unlikely".   Clearly, there is a triable issue of material fact as to this scientific dispute, which has not been resolved in the normal channels of science.

However, those facts essentially miss the point.  It is not disputed by defendants, and it is alleged by plaintiffs, that the defendants have not engaged in <u>any</u> NEPA hearings or other procedures by which the plaintiffs,

---

[25] <u>Hamilton v. Keystone Tankship Corp.</u>, 539 F.2d 684 (9th Cir. 1976)

or other members of the general public, would be able to contest the assertions of the defendants.   It is essentially uncontested that none of those requirements were met, no Findings of No Significant Impact prepared, no Environmental Assessment prepared, no Environmental Impact Statement prepared.

It is that fact, the lack of Hearings or NEPA Statements on these factual issues that essentially shows that summary judgment should be entered in favor of plaintiffs.   Those Hearings or NEPA Statements are required to be prepared by defendants, and this has not been done.   That is the particularized injury to plaintiffs, who as members of the public have a right under the NEPA regulations to attend such Hearings and/or review such NEPA Statements, so that the voice of the public can be heard.

3.    Discovery Incomplete

To date, Discovery in this matter has not been completed, and Plaintiffs are still awaiting the answers to their first set of interrogatories. The Discovery is anticipated to present additional extensive evidence that supports plaintiffs' claims, and shows that there would be a triable issue of material fact.  In particular, plaintiffs are seeking discovery pertaining to the following key points:

- What studies have been done on the potential for thermonuclear detonation of liquid Nitrogen, and where is the location of the various vats of liquid Nitrogen at the LHC, and what precautions have been taken to preclude inadvertent thermonuclear detonation of those vats from an errant beam?

- What studies have been done on the potential for thermonuclear detonation of the Carbon beam-dump, and what precautions have been put in place to preclude inadvertent thermonuclear detonation of that Carbon?

- What scientific papers have been reviewed that suggest the fallacious conclusion of the LSAG Report?  Has that review included the papers prepared by Dr. Plaga and Dr. Roessler which show the fallacious conclusion of the LSAG Report?

- Who selected the members of the LSAG?  Was any consideration given to selecting members who were not CERN employees [current or past]?

- What studies have been reviewed that show the potential for strangelets to engage in runaway fusion ['mass-bomb' effect]?  What studies have been reviewed that show that such fusion could potentially occur even if the strangelet were positively charged?

- What studies have been reviewed that show the potential for micro-black-holes to not evaporate?  Did those studies include papers by Dr. Roessler and Dr. Plaga?

- What consideration has been given to the current search for Hawking Radiation via the GLAST satellite?

- What consideration has been given to the pending search for strangelets via the AMS-2 satellite?

- What research proposals, if any, have been reviewed that would potentially find evidence that is supportive of the position that strangelets are natural on earth and would not be a novelty if created by the LHC?

- What research proposals, if any, have been reviewed that would potentially find evidence that is supportive of the position that micro black holes rapidly evaporate, or are natural on earth, and would not be a novelty if created by the LHC?

- Who made the decision not to engage in NEPA hearings?  What paperwork is there that reviews or elucidates that decision?

Accordingly, it is respectfully requested that the government defendants' motion for summary judgment be denied, and that this Court *sua sponte* enter summary judgment in favor of plaintiffs.

II

## Dismissal Inappropriate

1.   Generally

In addition to seeking a summary judgment on the factual disputes herein, the government defendants have also sought dismissal of the action pursuant to FRCP Rule 12(b) pertaining to alleged lack of subject matter jurisdiction.

In support of that motion, they allege several theories whereby the plaintiffs allegedly lack subject matter jurisdiction, whereby the plaintiff's claims are allegedly moot, and whereby plaintiffs' claims are allegedly time-barred.   These will be addressed in the order in which they appear in the government defendants' memorandum.   It is to be noted, however, in reviewing this that the Court should recognize that the issues raised all relate to triable factual questions as to whether the LHC is dangerous, and not to the government defendants' failure to provide NEPA documentation on that issue.

2.   Plaintiffs Have Standing

Defendants' arguments are innovative, but curiously miss the two main points:

First, plaintiffs have suffered an undisputable injury, namely they have been precluded from participating in NEPA documentation, whether that is by Environment Impact Statement and its required public hearings, Environmental Assessment and its required public input, or Findings of No Significant Impact, and its required public input.  They need not show any injury beyond the injury they suffer in being excluded from required NEPA procedures.

Second, the plaintiffs have demonstrated that they could easily suffer from an actual physical injury should the LHC produce a dangerous waste product.  The question as to whether the product of the LHC is dangerous is a question of fact, and as shown above, not subject to summary judgment.  Rather, it is a particularized fact that, if materialized, clearly shows a nexus between operation of the LHC and the injury to plaintiffs. This is neither speculative nor non-credible, but well-acknowledged, even by defendants, who nevertheless believe it is "unlikely" though they fully admit that such disastrous waste products, if produced, would directly impact plaintiffs.

Additionally, the actual injury suffered by plaintiffs as alleged in the complaint, namely the exclusion from participation in NEPA hearings, etc., is directly traceable to the failure of the government defendants to hold

such hearings, etc. as required by law.  It would be rather silly to argue to the contrary.[26]  Moreover, the federal defendants are active partners and participants with defendant CERN, sitting on the CERN council and participating in all major decisions of the LHC as a whole[27], as well as sitting on various other boards pertaining to the experimental chamber detectors located around the perimeter of the LHC.  Again, also see the Declaration of Federal Defendant Bruce Strauss, Attachment 4.[28]

Finally, a judicial decision requiring the government defendants to comply with NEPA laws would in fact directly redress plaintiffs' injuries, and accordingly since there are extensive funds remaining to be spent in Fiscal Year 2009 [contrary to the extensive false allegations of defendants' counsel], as per the Attachment 9 document of Federal Defendant Bruce Strauss, and as the Ninth Circuit[29] has recently explained, if the grant has not been fully disbursed and expended by a third party prior to suit, a plaintiff's NEPA claims can be redressed.

---

[26] Ecological Rights Found. v. Pac. Lumber Co., 230 F.3d 1141 99th Cir. 2000)
[27] Affidavit of Walter L. Wagner in support of Default Injunction against CERN.
[28] Page 5, Article VII, Involvement of the U.S. Party, subsection 7.1 reads:  "This [seat on CERN Council] will allow the U.S. Party to closely monitor the progress of the LHC activities and participate in all major decisions which will impact the U.S. contributions.";  subsection 7.4 reads:  "The U.S. Party shall be a full member of the ATLAS and CMS Resource Review Boards.";  subsection 7.5 reads:  "DOE shall be invited to appoint a member of the LHC Board when that body is created."
[29] Rattlesnake Coal v. EPA, 509 F.3d 1095 (9th Cir. 2007)

Yet still further, the requirements of causation and redressability are "relaxed" when a plaintiff alleges NEPA claims.[30]   Here, while the FY 2009 expenditures have apparently not yet been approved by Congress, government defendants are intending to spend those monies, have allocated exactly how and where the monies will be spent in 2009, and accordingly it is that intent that is controlling, not the actual "approval". Otherwise, a defendant could always claim that they have no intent to spend monies in the future, obtain dismissal of an action, and then go back to their original intent and obtain the requisite approval, thereby working a fraud upon both the complaining party and the court.

3.   <u>Plaintiff's Claims Are Not Moot</u>

The government defendants' false claims, which falsely claim that plaintiffs' claims are moot, rests upon a clear falsehood [which is likely a lie].   That falsehood is the false claim by counsel for government defendants that there is nothing left for the government defendants to do, in that all monies have allegedly been disbursed, and that the government defendants will not be spending any more money in conjunction with their partner defendant CERN.

---

[30] <u>Nuclear Info. & Resource Serv. v. Nuclear Regulatory Comm'n</u>, 457 F.3d 941 (9th Cir. 2006)

Of course, that claim by counsel is directly contradicted by its own declarant, which affirmed under oath that monies are budgeted for Fiscal Year 2009, at a rate much greater than in Fiscal Year 2008 due to the ramp-up of intended operations at the LHC.  The claim by counsel that all of the money has already been spent is simply a fiction, directly contradicted by the affidavit of Federal Defendant Bruce P. Strauss, which is detailed in his Attachment 9 [as previously noted in the affidavit of Dr. Wagner in support of a default injunction against CERN].

In particular, said Attachment 9 budgets $63,622,000 for Fiscal Year 2008 [claimed to have already been spent] and $72,450,000 for Fiscal Year 2009 [claimed left to be spent].  It further states:

"The U.S. LHC effort is one of the highest priority components of the HEP [High Energy Physics] program, endorsed repeatedly by HEPAP, and by the recent National Academy of Sciences study (EPP2010).  With the LHC turn-on occurring in 2008, the U.S. LHC program, jointly supported by the DOE and the NSF, will be in a critical phase in FY [Fiscal Year] 2009. An increase of almost 14% in DOE support above FY 2008 is planned. This includes increased costs for Fermilab direct program support.  The main use of the resources will be for LHC software and computing, and pre-operations and maintenance of the U.S.-built systems that are part of the LHC detectors.   The U.S. also participates in accelerator commissioning and accelerator physics studies using the LHJC, along with R&D [Research and Development] for potential future upgrades to both the machine and the detectors. Most of the increase in FY 2009 funding is for accelerator R&D aimed at supporting LHC upgrades.   With first data anticipated in

2008, <u>a high priority will be on ramp-up of operations in FY 2009.</u>"          [bracket inserts added for clarity, <u>underlining</u> added for emphasis]

Clearly, the government defendants have <u>not</u> finished with their funding of the LHC, as claimed by their counsel, and accordingly plaintiffs' claims are <u>not</u> moot.

This lack of credibility carries over across the spectrum, from the alleged *amici* [Glashow, Wilczek and Wilson] who cannot even get the simplest LHC facts correct, to the lack of candor by those self-proclaimed *amici* and the federal defendants' declarants who believe it's acceptable to engage in risky experiments that threaten the entire planet if it is "unlikely" to happen.

The Challenger disaster was unlikely; Chernobyl was unlikely; Bhopal was unlikely; and the list goes on and on.   In none of those adverse scenarios was it intended to cause a disaster, and the situation was analyzed in advance from a number of points of view.   Only in the Challenger disaster in the above-referenced list of disasters was the advice of the engineers overridden by the management team which lacked the engineers' expertise.   That decision proved exceptionally disastrous.

Here, the situation is analogous to the Challenger disaster. Numerous scientists, safety experts, and others have all warned and

cautioned against operation of the LHC without proper safety review. Numerous scenarios have been raised and not refuted. Others are still being raised[31]. And yet, the stakes here are not a mere 7 astronauts' lives, or a few thousand direct and indirect deaths at Chernobyl, or a few thousand direct deaths at Bhopal – rather the stakes are the deaths of all present and future generations of mankind – the end of humanity.

Accordingly, plaintiffs' claims are not moot, but instead very timely.

4.      The United States Is Not Immune

The government defendants [and other governmental agencies] are not immune from suit when specific congressional legislation has been

---

[31] At this writing, Dr. Wagner, Dr. Webb and others are analyzing the potential for an adverse scenario with an errant LHC beam. Such errant beams can occur, and one occurred at the Fermilab collider a few years ago. That beam is about 1,000-fold lower in energy than the proposed LHC Lead beam, yet torched a small hole through about 1.5 meters of steel after deviating from its intended path and burning through the vacuum-container containment wall. If such beam were to strike a vat of liquid Nitrogen, it almost certainly would generate temperatures that exceed the fusion ignition temperature for Nitrogen, which normally requires the detonation of a fission bomb. When Dr. Teller did his calculations for ignition of atmospheric Nitrogen burning, his formula requires the density of Nitrogen in air. He found that our air needed to be about twice as thick [dense] as it actually is in order to ignite. Because liquid Nitrogen is about 1,000 times denser than the Nitrogen in the air that we breathe, his 'safety-factor' of about 1.5 immediately evaporates, and it appears certain that internally reaching fusion-ignition temperature would detonate a vat of liquid Nitrogen, creating a thermonuclear explosion likely on par with the Tsar Bomba, the largest ever previously exploded at about 50 Megatons equivalent. The kinetic energy of an errant beam, focused into a very small volume, should likely reach such ignition temperature in that small volume.

enacted which anticipates enforcement in the courts.[32]   Such is the case herein.

Specific Environmental Protection Agency regulations have been enacted for the protection of members of the public, and to provide them a forum following those regulations [NEPA regulations herein].   Such legislation becomes meaningless if governmental agencies can violate same with impunity, and not have the legislation enforceable by the courts. Accordingly, while the United States has general immunity from suit unless it consents to be sued, such consent is evident herein in the form of NEPA regulations, and their requirements for public hearings, etc., which are enforceable via the Administrative Procedure Act [APA].

Likewise, even though the Precautionary Principle is not part of the NEPA requirements, the government defendants are subject to having those standards enforceable against them in Europe, and accordingly, they would be required to comply with the standards required to be met by their partner CERN, as such standards would be enforceable against the United States in Europe.

Accordingly, the government defendants do not enjoy sovereign immunity.

---

[32] Hodge v. Dalton, 107 F.3d 705 (9th Cir. 1997)

5.    Plaintiffs' Claims Are Not Time-Barred

Pursuant to the Administrative Procedure Act (APA), which confers jurisdiction on plaintiffs to seek enforcement of NEPA violations[33], and the statute of limitations under Title 28, United States Code, section 2401(a), a cause of action must be brought within 6 years of its accrual.   While the government defendants herein began issuing awards of funding in 1996 [see Attachment 9, Declaration of Bruce Strauss], that funding decision is made each year as a separate agency decision.   There was not a single funding decision made, followed by irrevocable year-by-year disbursements.   Rather, there have been year-by-year decisions to grant funding, following along a general plan or outline of funding that is quite flexible.

Accordingly, plaintiffs have brought their suit well within the 6-year statute of limitations, in that the funding decisions are a currently ongoing process, decided on a year-by-year basis each Fiscal Year [Attachment 9, Declaration of Bruce Strauss], and plaintiffs' claims are not time-barred.

III

Conclusion

---

[33] Ashley Creek Phosphate Co. v. Norton, 420 F.3d 934 (9th Cir. 2005)

The government defendants' contentions are not well founded, and do not support either summary judgment or dismissal.

There are triable issues of material fact with respect to the hazards of the LHC, which include whether it will likely, or "unlikely" produce dangerous strangelets; whether it will likely, or "unlikely" produce dangerous microblackholes; or whether an errant beam might accidentally trigger a thermonuclear explosion in nearby liquid Nitrogen or Carbon.

Further, there is no triable issue of material fact with respect to the failure of the government defendants to either adequately address those issues in a timely manner, or address those issues within the confines of NEPA requirements, or even address those issues at all with respect to the potential for an errant beam to trigger a thermonuclear blast.

The purpose of a proper safety analysis is not to examine what happens if everything goes right. Tens of thousands of engineers and scientists worked long and hard to make certain that the Challenger flew properly. Only a few engineers gave directions/instructions that the Challenger should not have flown. They were listened to, but their advice not followed, because the NASA management team wanted to save face and meet their own internal timelines.

Instead, the purpose of a proper safety analysis is to examine what can go wrong. There are criteria for doing such a study, and one such criteria is that it be done by persons who are at 'arms-length' with respect to the people engaging in the project, and that they be fully independent. No such fully independent study has been done. Rather, a perfunctory study was completed with an intended result, performed by CERN employees and former employees, which has since been subjected to severe valid scientific criticisms that the conclusions are not supported by the available data.

Moreover, that particular study has not even examined the possibility of an errant beam, and whether it would trigger a thermonuclear detonation which would completely destroy the LHC, and most of the city of Geneva and the surrounding countryside, and instead focuses on theoretical possibilities of global destruction, and how they believe they might have eliminated those possibilities [which plaintiffs' affiants show have not been eliminated].

Yet further, it is acknowledged that the defendants have not even attempted to comply with NEPA requirements, and instead they seek ways to be excused from such compliance.

Accordingly, none of the criteria for summary judgment have been met.

Likewise, with the dismissal portions of the motion, none of the requirements for dismissal have been met.

Plaintiffs have standing because they are in the class of persons who could seek to enforce NEPA requirements via the APA.  It is neither speculative nor non-credible that NEPA has not been complied with.  That is the actual injury to plaintiffs, the failure of defendants to comply with NEPA, and not the speculative injuries they could suffer if the anticipated physics as known to plaintiffs is made manifest.

If the anticipated injury has a likelihood of occurring of 90%, it still remains "speculative" in that it still remains in the future and not yet manifested.  Here, the speculative likelihood of occurrence of disastrous novel particles has been set at 50% by the plaintiffs, while the defendants assert only that it is "unlikely".  Again, that is something that the public should be allowed to weigh in on via NEPA procedures.

Plaintiffs' claims are neither moot nor time-barred.  The federal defendants have been, year-by-year, approving authorizations for expenditures, including for 2009.  Plaintiffs' claims are accordingly timely, and well within the six-year statute of limitations.

Finally, if there are any doubts, they are obligated to be resolved in favor of plaintiffs.   Because either dismissal or summary judgment is a drastic remedy, strict compliance with the rules requires that, while discovery is still pending and there exists a welter of applicable federal regulations, neither summary judgment nor dismissal should be entered, but that the matter should be allowed to proceed to trial for a full hearing on the merits in which the plaintiffs can present their numerous witnesses, and the credibility of those witnesses be ascertained.

Finally, summary judgment is appropriate in favor of plaintiffs, in that it is undisputed that the government defendants have not complied with the NEPA requirements and this Court should *sua sponte* enter judgment in favor of plaintiffs.

Dated:        August 20, 2008

Walter L. Wagner

DR. SANCHO signature to arrive via an "Erratum" separately.

_____

Luis Sancho

27