ORIGINAL

Luis Sancho
Walter L. Wagner
PO Box 411
Honomu, HI 96728
808-964-5535
*pro se*

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

SEP 17 2008

at ___ o'clock and ___ min. ___ M.
SUE BEITIA, CLERK

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF HAWAII

--ooOoo--

| | |
|---|---|
| LUIS SANCHO, et al., | Civil No. CV08-00136 HG |
| Plaintiffs, | **REPLY MEMORANDUM** |
| vs. | |
| US DEPARTMENT OF ENERGY, et al., | |
| Defendants. | Date:  Oct. 14, 2008<br>Time: 10:00 A.M.<br>Court: Hon. Kevin S.C. Chang |

## REPLY MEMORANDUM

I

## Facts in a Nutshell

Defendant CERN is a recalcitrant defendant seeking to evade jurisdiction in the United States, with which it has entered into a partnership relationship Agreement for the construction and operation of the LHC. Defendant CERN is composed of numerous individuals from many countries who have banded together for a common purpose to construct a machine, the LHC, for the purpose of creating new kinds of matter not previously existent on earth. Its machine is located in Switzerland and France.

On Wednesday, May 29, 2008 Mr. Marco Breitenmoser, a competent person serving as plaintiffs' agent, walked into the offices at defendant CERN's Legal Department, and hand-delivered to Mrs. Lucie Barbin, a competent secretary in the employ of defendant CERN, the Summons and Complaint that had been filed herein. Thereafter, he prepared a certificate evidencing such service, which was attached to the Certificate of Service filed herein. A correct translation of his certificate, which had been written in French, is also now provided by the government defendants attached to their opposition to the instant motion, clearly evidencing that such service in fact took place.

The operational language of defendant CERN is English, and their numerous web-sites are in English.

These facts are essentially undisputed by all parties.

II

Hague Convention Allows For Type of Service Performed

1. This Court, in its *Minute Entries* dated September 9, 2008, Docket Number 75, requested that it be briefed on defendants' contention that "Plaintiffs did not properly serve Defendant CERN in accordance with Federal Rule of Civil Procedure 4(f) and the Hague Convention." Accordingly, plaintiffs address that issue first.

2. Federal Rules of Civil Procedure [FRCP], Rule 4(f) is designed to allow service by means that are "reasonably calculated to give notice", both in Rule 4(f)(1) when the Hague Convention might be applicable, and in Rule 4(f)(2) when the Hague Convention is not applicable. It is clear that the intent of the Rule is to insure that an opposing party in a foreign country is provided actual notice of the lawsuit, and not merely some form of constructive notice such as publication in a foreign newspaper, or other constructive notice.

3. The *CONVENTION ON THE SERVICE ABROAD OF JUDICIAL AND EXTRAJUDICIAL DOCUMENTS IN CIVIL OR COMMERCIAL MATTERS* (Concluded 15 November 1965; Entered into force 10 February 1969)

[hereinafter *Hague Convention*] was adopted as a means for making service of process and service of extrajudicial documents easier for the serving party, and to also insure that the defendant receives actual notice, and not merely 'constructive' notice such as by publication in a newspaper. Generally, it authorizes the participating countries [including Switzerland and the United States] to develop a Central Authority which would be tasked with effecting service of such documents upon entities/persons resident within that Country. The Central Authority is also obligated to translate the documents from English or French into the language of the recipient, if that language is not English or French. The purpose of the *Hague Convention* is two-fold; 1) to insure that parties who are subjects of suit in a foreign country receive actual notice of the suit, and not merely constructive notice; and 2) that such recipients can have the particulars of the suit translated into their own language if they do not speak English or French. If they speak English or French, the two languages of the *Hague Convention*, no translation is required.

4.   The *Hague Convention* is supplementary to, and not necessarily a replacement for, the traditional means of service of process that were extant at the time of its adoption. It would require that if the recipient does not speak English or French, that the documents be translated into the language of the

recipient, if the existent traditional service of process methodology were utilized instead of having the local Central Authority do the translation and service.

5.    In particular, Article 10 of the *Hague Convention* reads in pertinent part:

> "Provided the State of destination does not object, the <u>present Convention shall not interfere with</u>
>
> ...
>
> b) the freedom of ... competent persons of the State of origin to effect service of judicial documents directly through ... competent persons of the State of destination.
>
> c) <u>The freedom of any persons interested in a judicial proceeding to effect service of judicial documents directly through ... competent persons of the State of destination.</u>"

[<u>underlining</u> added for emphasis]

6.    No such objection was noted, or has been noted, by Switzerland. Any claims by defendant CERN that they enjoy immunity from service of process, or that their facilities are inviolable, should be barred in that CERN is not a sovereign nation recognized as such by the United States. Any agreements that they might have with third parties or nations other than the United States that would seek to grant them sovereign immunity are thereby null and void with respect to process originating from the United States, and if applicable to CERN by other nations, would not negate the privilege to engage in otherwise

5

lawful service of process allowed pursuant to Article 10 of the *Hague Convention*.

7.   Should defendant CERN seek to claim that Switzerland objects to service of process on CERN by private parties as actually performed because they are immune from service of process, then such claim of immunity would thereby render ineffective any other method of utilization of the provisions of the *Hague Convention*, again rendering such provisions unenforceable by the U.S. Courts, which does not recognize immunity from service of process upon private organizations, only upon sovereign nations.

III

Default Injunction, or Interim Preliminary Injunction
<u>Pending Late-Filing of Answer, is Appropriate</u>

8.   Due to the exigency of the situation, should this Court be inclined to grant defendant CERN the opportunity to late-file an Answer herein on their claim of mistaken belief to having immunity from service of process, or on their claim that process was not properly served, then it is requested that this Court grant a preliminary injunction against defendant CERN, rather than the requested permanent injunction, during the pendency of the time that they are filing an Answer, answering interrogatories, and preparing for trial in June 2009.

9. As detailed in the accompanying affidavit in support, the severe accident risk problems associated with operation of the LHC far outweigh any claims by defendant CERN that they would be prejudiced by curtailment of their operation pending completion of a proper safety review.

10. The risks associated with operation of the LHC currently include the recently identified risks that have never been examined by CERN, but are not limited to, the accidental thermonuclear detonation of their beam-dump, of their beam collimators, of their liquid Helium, and any stray cylinders of compressed air, due to an accidental errant beam. They also include the previously identified risks from the likely creation of new particles including runaway-fusion strangelets, and microblackholes.

11. Some of those risks have never been addressed by defendant CERN, such as accidental thermonuclear detonations; and others which were addressed in their internal LSAG Report have been seriously challenged by outside scientists. Until a full risk-assessment via proper NEPA procedures can be obtained, defendant CERN should be enjoined from any further efforts at collisions and operation of high-energy beams in their LHC.

12. The risk-assessment of defendant CERN's operation is currently ongoing, and there are an increasing number of scientists who are becoming aware of the gross inadequacies of the existent LSAG "Safety Report",

particularly as it pertains to creation of strangelets, which creation of such deadly new particles can at best be only described by CERN and the government defendants as "unlikely", and at worst by plaintiffs and their witnesses as extremely plausible. Some of those scientists now include Dr. Rainer Plaga, Dr. Otto Roessler, Dr. Richard Webb, and others, and it is expected that that list will continue to grow extensively as the fact that CERN has sought to gloss over the safety issues, or in the case of the thermonuclear explosion issue has simply completely overlooked the issue, is brought to their attention.

13. Accordingly, should this Court believe that CERN should have a second chance at filing an Answer herein, this Court is obligated to issue a preliminary injunction in conjunction with any order therewith to preclude defendant CERN from taking advantage of its recalcitrant actions in not filing an Answer even though it actually received the Summons and Complaint herein.

Dated:     September 12, 2008

*/s/ Luis Sancho*

Luis Sancho

*/s/ Walter L. Wagner*

Walter L. Wagner