IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| LUIS SANCHO, WALTER L. WAGNER, | ) ) | CIVIL NO. 08-00136 HG KSC |
| | ) | |
| Plaintiffs, | ) ) | **ORDER GRANTING FEDERAL DEFENDANTS' MOTION TO** |
| vs. | ) ) | **DISMISS** |
| | ) | |
| U.S. DEPARTMENT OF ENERGY, FERMILAB, CENTER FOR NUCLEAR ENERGY RESEARCH (CERN), NATIONAL SCIENCE FOUNDATION, DOE ENTITIES 1-100, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |
| —————————————————— | ) ) | |

ORDER GRANTING FEDERAL DEFENDANTS' MOTION TO DISMISS

Two private individuals sue to enjoin several federal agencies and a European nuclear energy research center from operating the Large Hadron Collider ("LHC"), a subatomic particle accelerator straddling the French-Swiss border near Geneva, Switzerland.  The LHC is designed to collide high-energy beams of subatomic particles into one another for purposes of scientific research. Plaintiffs allege that operation of the LHC could potentially trigger various irreversible processes that could lead to the destruction of the Earth. Plaintiffs' implicit

argument is that this Court has jurisdiction to enjoin the operation of the LHC because the Defendants are obligated to fulfill the requirements stated within the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4347, before commencing operation of the LHC.

The United States Defendants move for dismissal for lack of subject matter jurisdiction or for summary judgment on other grounds. Defendants' Motion to Dismiss (Doc. 14) is **GRANTED**.

## PROCEDURAL HISTORY

On March 21, 2008, Plaintiffs Luis Sancho and Walter L. Wagner ("Plaintiffs") filed a complaint. (Doc. 1, "Complaint".)

On June 24, 2008, Federal Defendants United States Department of Energy, Fermilab, and National Science Foundation ("Defendants") filed a Combined Motion to Dismiss and Motion for Summary Judgment. (Doc. 14, "Motion".) Defendants also filed four declarations by Denis Kovar, Joanna Livengood, Morris Pripstein, and Bruce Strauss, in support of the Motion. (Docs. 17-20.)

On July 1, 2008, Plaintiffs filed a motion entitled, "Request for Entry of Default Against Defendant CERN [Center for Nuclear Energy Research]." (Doc. 24, "Request".) Plaintiffs also filed a declaration by Walter Wagner in support of the Request.

2

(Doc. 25.)

On August 5, 2008, Plaintiffs filed a proposed Judgment by Default Against Defendant CERN. (Doc. 28.)

On August 5, 2008, Plaintiffs filed a motion entitled, "Motion for Permanent Injunction Against Defaulting Defendant CERN." (Doc. 29.) Plaintiffs also filed an affidavit by Walter Wagner in support of the Motion for Permanent Injunction. (Doc. 30.)

On August 14, 2008, a letter was received from Alexander Wittwer, the Charge d'Affaires at the Embassy of Switzerland in the United States of America, stating that CERN disputes jurisdiction based on the method of delivery of Plaintiffs' Complaint. (Doc. 58.)

On August 22, 2008, seven days after it was due (Local Rule 7.4), Plaintiffs filed an Opposition to Defendants' Combined Motion to Dismiss and for Summary Judgment (Doc. 49, "Opposition") and affidavits by Plaintiffs Walter Wagner and Luis Sancho in support of the Opposition. (Docs. 54-55.)

On August 22, 2008, the same date Plaintiffs filed their Opposition, Defendants' filed a timely Reply in Support of Combined Motion to Dismiss and Motion for Summary Judgment. (Doc. 48, "Reply".)

On August 26, 2008, Plaintiffs filed a Rebuttal to Federal Defendant' Reply in Support of Combined Motion to

Dismiss and for Summary Judgment (Doc. 52, "Rebuttal") without asking leave from the Court as required by Local Rule 7.4.

On August 29, 2008, Defendants filed a Declaration of Bruce P. Strauss in Response to the August 5, 2008 Affidavit of Walter L. Wagner and In Support of Federal Defendants' June 24, 2008 Motion to Dismiss (Doc. 66) without authorization from the Court. See Local Rule 7.2(f).

On September 2, 2008, on the morning of the hearing, Plaintiffs filed an Affidavit by Walter L. Wagner in Rebuttal to the Late-Filed Affidavit of Bruce Strauss. (Doc. 67.)

The hearing on Defendants' Motion occurred on September 2, 2008. At the hearing, the Court orally granted the Motion to Dismiss as to Plaintiffs' claims that the United States was somehow bound by international law or foreign agreements named by Plaintiffs. The Plaintiffs' claims were based on the European Council's "Precautionary Principle" and the European Commission's "Science and Society Action Plan." Neither document has been incorporated into domestic law, by international treaty or otherwise. Defendants' Motion to Dismiss (Doc. 14), filed on June 24, 2008, was orally granted as to the section of the motion entitled, "The United States is Immune from Suit Regarding Documents Issued by the European Commission and Council for the European Union." (Defendants' Motion, Doc. 14, Part I(C).)

At the hearing, the Court also denied Federal Defendants' Ex Parte Application to Strike Plaintiffs' Untimely Responses to Federal Defendants' Motion to Dismiss or, in the Alternative, for an Opportunity to Reply. (Doc. 56.)

The Motion for Leave to File Brief Amicus Curiae (Doc. 37) and Motion for Leave to File Amended Brief Amicus Curiae (Doc. 44) were both denied. The filings were not supported by affidavits or other evidence that demonstrated that the alleged *amici* were involved in the filing. Both the *amicus curiae* brief and the amended *amicus curiae* brief were unsupported argument.

On September 19, 2008, *amici curiae*, Sheldon Glashow, Frank Wilczek, and Richard Wilson, filed a Motion for Permission to File Motion for Leave to Resubmit Amended Brief Amicus Curiae Filed August 21, 2008 with supporting affidavits. (Doc. 80.)

On September 24, 2008, the Court issued a Minute Order granting the Motion for Permission to File Motion for Leave to Resubmit Amended Brief Amicus Curiae Filed August 21, 2008. (Doc. 87.)

On September 25, 2008, *amici curiae*, Sheldon Glashow, Frank Wilczek, and Richard Wilson, filed a Motion for Leave to Resubmit Amended Brief Amicus Curiae Filed August 21, 2008. (Doc. 88.)

On September 26, 2008, the Court issued a Minute Order granting the Motion for Leave to Resubmit Amended Brief Amicus

Curiae Filed August 21, 2008. The Court has considered the
Amended Brief Amicus Curiae Filed August 21, 2008 in reaching
its decision.

## BACKGROUND

The Complaint alleges that Plaintiff Luis Sancho is a
citizen of Spain, with legal residence in the State of Hawaii.
(Compl. at ¶ 1.) Plaintiff Walter L. Wagner alleges he is a
citizen and resident of the State of Hawaii. (Id. at ¶ 2.)

The Defendants include two federal agencies ("Federal
Defendants"), the United States Department of Energy ("DOE") and
the National Science Foundation ("NSF"), a United States
government agency responsible for the promotion of scientific
research. (Id. at ¶¶ 3, 5.)

Plaintiffs have also named as Defendants the Center
for Nuclear Energy Research ("CERN"), an intergovernmental
European agency that conducts nuclear research (Id. at ¶ 6), and
Fermilab (Id. at ¶ 4). The parties dispute whether Fermilab has
been appropriately named as a Defendant. Federal Defendants
state that Fermilab is a collection of federal buildings,
facilities, and equipment wholly-owned by the United States
Department of Energy, not a separate legal entity. (Federal
Defendants' Livengood Decl. ¶ 5.)

The Large Hadron Collider is a particle accelerator

6

that straddles the French-Swiss border near Geneva, Switzerland. (Federal Defendants' Strauss Decl. ¶ 6.) The LHC is comprised of a 27 kilometer ring of superconducting magnets, designed to collide high-energy beams of subatomic particles into one another. (Id.) The collision fractures the atoms into more fundamental particles that can be observed and studied for purposes of scientific research. (Compl. at ¶ 11.)

Plaintiffs allege that the collisions are unsafe and could potentially result in the destruction of the Earth. (Id. at ¶ 13.) Plaintiffs posit three separate theories regarding the outcome of the LHC particle experiments: (1) the creation of a runaway fusion reaction that would eventually convert all of Earth into a single, large 'strangelet'; (2) the creation of a 'micro black hole' into which the Earth would fall; and (3) the creation of a runaway reaction due to the formation of a 'magnetic monopole'. (Id.) Under all of Plaintiffs' theories, the LHC particle experiments could lead to the end of all mankind. (Id.) Plaintiffs do acknowledge, however, that various competing scientific theories exist regarding the outcome of the subatomic collisions to be performed at the LHC. (Id. at ¶ 12.)

It is the Federal Defendants' position that the LHC particle experiments have been thoroughly reviewed and are completely safe. Federal Defendants' position regarding the safety of the LHC is fully stated in the Declaration of Bruce P.

7

Strauss. (Strauss Decl. ¶ 31.) Dr. Strauss is the Program Manager in the Office of High Energy Physics, Office of Science, for the United States Department of Energy. (Id. at ¶ 1.) In support of Federal Defendants' position, Dr. Strauss attaches to his Declaration the "Review of the Safety of LHC Collisions," a report authored by CERN's LHC Safety Assessment Group. (Strauss Decl. ¶ 31 and Attachment 15.) The "Review of the Safety of LHC Collisions" states as its conclusion: "There is no basis for any concerns about the consequences of new particles or forms of matter that could possibly be produced by the LHC." (Id.)

The nature of the United States' involvement in the Large Hadron Collider is not agreed upon by the parties. Plaintiffs allege that Federal Defendants and Defendant CERN engaged in a "partnership relationship" to construct the LHC. (Compl. at ¶ 8.) Federal Defendants do not dispute that they were involved with the LHC project, but offer evidence that the construction, operation, and management of the LHC is the sole responsibility of CERN, an intergovernmental European agency headquartered in Geneva, Switzerland. (Strauss Decl. ¶ 5.) According to the Federal Defendants, all 20 member states of CERN are European countries who are represented on CERN's governing council; the United States is not a member state of CERN. (Id. at ¶¶ 5, 12.)

Federal Defendants state that the United States'

8

involvement with the LHC is governed by a December 8, 1997 International Cooperation Agreement ("1997 Agreement") with the Center for Nuclear Energy Research. (Strauss Decl. ¶ 8 and Attachment 4.) The United States maintains that the 1997 Agreement outlined the parties' respective responsibilities regarding the construction and operation of the LHC. According to the 1997 Agreement, the United States would assist in the construction of 38 (out of approximately 1890) superconducting magnets, which are used to steer the particle beams around the LHC ring. (Strauss Decl. ¶ 20.) The 1997 Agreement provides that the United States would also participate in the construction of two of the four detectors used to observe the subatomic collisions (id.) and in experiments involving the detectors (id. at ¶¶ 24, 25.).

It is the Federal Defendants' position that the 1997 Agreement shows that the United States is only given non-voting "observer" status in CERN's governing council, and the United States has no decision-making authority in CERN. Accordingly, the United States is only permitted to attend council meetings and receive council documents. (Id. at ¶ 12.) The 1997 Agreement reflects that the United States was not given any role in making financial, policy, or management decisions within CERN, or given any authority or decision-making power with regard to the construction or operation of the LHC. (Id. at ¶¶ 12, 13.) Under

9

the United States' interpretation of the 1997 Agreement, CERN member states have the exclusive responsibility for all such decisions. (<u>Id.</u> at ¶ 13.)

Plaintiffs orally contested Federal Defendants' allegations regarding United States' control over the LHC during the September 2, 2008 hearing, but have not provided the Court with any substantive written evidence in support of their position.

Pursuant to the 1997 Agreement, Federal Defendants state that they contributed a total of $531 million toward the construction of the LHC. (<u>Id.</u> at ¶¶ 14, 21, 22.) Federal Defendants calculate that this expenditure represents less than 10% of the LHC's total construction cost of $5.84 billion.[1] (<u>Id.</u> at ¶ 21.) Of the $531 million contributed by Federal Defendants, the DOE contributed $450 million toward the construction of the accelerator components and the two detectors. (<u>Id.</u> at ¶ 18.) The remaining $81 million was contributed by the NSF toward the construction of the two detectors. (Federal Defendants' Pripstein Decl. ¶ 9.)

The United States indicates that their contributions toward the construction of the detector and the accelerator components have now been completed and the components are now in

---

[1]    Various other materials suggest that the total cost of constructing the LHC far exceeds $5 billion.

Geneva, Switzerland, under the complete control of CERN. (Id. at ¶ 7; Strauss Decl. ¶ 22.)

In addition to providing funding for the construction of the LHC, Federal Defendants will also provide support for the operation and maintenance of the LHC. (Pripstein Decl. ¶ 10.; Strauss Decl. ¶¶ 24, 25.) Federal Defendants' involvement is projected to include supplying additional federal funding and providing research scientists to CERN. (Pripstein Decl. ¶ 10.; Strauss Decl. ¶ 25.)

## STANDARD OF REVIEW

### I.   Motion to Dismiss

The Defendants seek dismissal of Plaintiffs' Complaint for lack of subject matter jurisdiction. A case is properly dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) when the court lacks the constitutional or statutory power to adjudicate the case.

A court may consider extrinsic evidence in a 12(b)(1) motion to dismiss including:

> affidavits or any other evidence properly before the court .... It then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction.

Ass'n of American Medical Colleges v. United States, 217 F.3d

770, 778 (9th Cir. 2000) (<u>citing</u> <u>St. Clair v. City of Chico</u>, 880 F.2d 199, 201 (9th Cir. 1989) (further citations omitted)).

In evaluating a complaint pursuant to a motion to dismiss, the court must presume all factual allegations to be true and draw all reasonable inferences in favor of the non-moving party. <u>Usher v. City of Los Angeles</u>, 828 F.2d 556, 561 (9th Cir. 1987); <u>see</u> <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974) (the complaint must be liberally construed, giving the plaintiff the benefit of all proper inferences); <u>Wileman Bros. & Elliott, Inc. v. Giannini</u>, 909 F.2d 332, 334 (9th Cir. 1990).

Conclusory allegations of law and unwarranted inferences, though, are insufficient to defeat a motion to dismiss. <u>Pareto v. F.D.I.C</u>, 139 F.3d 696, 699 (9th Cir. 1998); <u>In re VeriFone Securities Litigation</u>, 11 F.3d 865, 868 (9th Cir. 1993) (conclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim); <u>Western Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981), <u>cert denied</u>, 454 U.S. 1031 (1981) (the Court does not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations"). Additionally, the Court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. <u>Sprewell v. Golden State Warriors</u>,

12

266 F.3d 979, 988 (9th Cir. 2001).

When the motion to dismiss is a factual attack on subject matter jurisdiction, no presumptive truthfulness attaches to plaintiff's allegations. The existence of disputed material facts will not preclude the trial court from evaluating for itself the existence of subject matter jurisdiction in fact. Thornhill Pub. Co., Inc. v. General Tel. & Electronics Corp., 594 F.2d 730, 733 (C.A.Wash. 1979); Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004), cert. denied, 2005 WL 282138 (May 2, 2005).

The party seeking to invoke the jurisdiction of the Court has the burden of establishing that jurisdiction exists. Scott v. Breeland, 792 F.2d 925, 927 (9th Cir. 1986); Thornhill, 594 F.2d at 733. "[A] Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency," whereupon the plaintiff must "present affidavits or any other evidence necessary to satisfy its burden." St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989) (holding that in a factual attack on subject matter jurisdiction, the Court may accept and evaluate evidence to determine whether jurisdiction exists).

II.   Motion for Summary Judgment

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is

13

entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

To defeat summary judgment there must be sufficient evidence

that a reasonable jury could return a verdict for the nonmoving

party. Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916

(9th Cir. 1997).

     The moving party has the initial burden of

"identifying for the court the portions of the materials on

file that it believes demonstrate the absence of any genuine

issue of material fact." T.W. Elec. Serv., Inc. v. Pacific

Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)

(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

The moving party, however, has no burden to negate or disprove

matters on which the opponent will have the burden of proof at

trial. The moving party need not produce any evidence at all on

matters for which it does not have the burden of proof.

Celotex, 477 U.S. at 325. The moving party must show, however,

that there is no genuine issue of material fact and that he or

she is entitled to judgment as a matter of law. That burden is

met simply by pointing out to the district court that there is

an absence of evidence to support the non-moving party's case.

Id.

     If the moving party meets its burden, then the

opposing party may not defeat a motion for summary judgment in

the absence of probative evidence tending to support its legal

theory. <u>Commodity Futures Trading Comm'n v. Savage</u>, 611 F.2d 270, 282 (9th Cir. 1979). The opposing party must present admissible evidence showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); <u>Brinson v. Linda Rose Joint Venture</u>, 53 F.3d 1044, 1049 (9th Cir. 1995). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Nidds</u>, 113 F.3d at 916 (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986)).

The court views the facts in the light most favorable to the non-moving party. <u>State Farm Fire & Casualty Co. v. Martin</u>, 872 F.2d 319, 320 (9th Cir. 1989). Opposition evidence may consist of declarations, admissions, evidence obtained through discovery, and matters judicially noticed. Fed.R.Civ.P. 56(c); <u>Celotex</u>, 477 U.S. at 324. The opposing party cannot, however, stand on its pleadings or simply assert that it will be able to discredit the movant's evidence at trial. Fed.R.Civ.P. 56(e); <u>T.W. Elec. Serv.</u>, 809 F.2d at 630. The opposing party cannot rest on mere allegations or denials. Fed.R.Civ.P. 56(e); <u>Gasaway v. Northwestern Mut. Life Ins. Co.</u>, 26 F.3d 957, 959-60 (9th Cir. 1994). Nor can the opposing party rest on conclusory statements. <u>National Steel Corp. v. Golden Eagle Ins. Co.</u>, 121 F.3d 496, 502 (9th Cir. 1997).

## **ANALYSIS**

The district courts of the United States are courts of

15

limited jurisdiction. <u>Exxon Mobil Corp. v. Allapattah Servs.</u>, 545 U.S. 546, 552 (2005). Federal district courts have no jurisdiction without specific statutory authorization. <u>Id.</u> In 28 U.S.C. § 1331, "Congress has conferred on the district courts original jurisdiction in federal-question cases – civil actions that arise under the Constitution, laws, or treaties of the United States." <u>Exxon Mobil Corp.</u>, 545 U.S. at 552.

> I.   <u>NEPA</u>

The Complaint does not address a basis for jurisdiction in this Court. Jurisdiction may be found over this action only if there is a Federal Government violation of the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4347.

Congress enacted NEPA to provide a "national policy which will encourage productive and enjoyable harmony between man and his environment; to promote efforts which will prevent or eliminate damage to the environment and biosphere and stimulate the health and welfare of man; [and] to enrich the understanding of the ecological systems and natural resources important to the Nation[.]" 42 U.S.C. § 4321.

NEPA requires that for all "major Federal actions significantly affecting the quality of the human environment," the relevant federal agency must prepare and file a detailed statement analyzing the environmental impact of a proposed

16

action. 42 U.S.C. § 4332(2)(C). This statement is called the Environmental Impact Statement ("EIS"). An EIS must contain, among other things, analysis of the projected environmental impact, proposed mitigation measures, an evaluation of the cumulative environmental impact, and alternatives to the proposed action. 40 C.F.R. §§ 1502.1-1502.25. The EIS filing ensures that the federal agency considers all environmental factors when deciding whether to proceed with a proposed project, and provides notice to the public that such concerns were taken into account. See Baltimore Gas & Electric v. Natural Resources Defense Council, 462 U.S. 87, 97 (1983).

All proposed projects do not require the filing of an EIS. The federal agency must first determine whether this statement is required under NEPA. 40 C.F.R. § 1501.4(a). If the answer is not readily apparent, the federal agency may prepare an environmental assessment ("EA") in order to determine whether a full EIS is necessary. 40 C.F.R. § 1501.4(b)-(c). If the proposed action will not significantly affect the human environment, the agency can issue a finding of no significant impact ("FONSI"). 40 C.F.R. § 1508.13. If no proposal is pending, or a proposed action has already been carried out, an EIS is not required. See Sierra Club v. Penfold, 857 F.2d 1307, 1317-1318 (9th Cir. 1988).

II.   NEPA's "Major Federal Action" Requirement

17

NEPA requires federal agencies to prepare and file an EIS before undertaking any "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(C). "'Major Federal actions' includes actions with effects that may be major and which are potentially subject to Federal control and responsibility." 40 C.F.R. § 1508.18.

Here, Federal Defendants have undertaken a joint project with the Center for Nuclear Energy Research ("CERN") in order to construct the Large Hadron Collider ("LHC"). Federal Defendants state that pursuant to the December 8, 1997 International Cooperation Agreement ("1997 Agreement"), they have contributed a total of $531 million toward the construction of the LHC. (Strauss Decl. ¶¶ 14, 21, 22.) According to Federal Defendants' calculations, this expenditure represents less than 10% of the LHC's total construction cost of $5.84 billion. (Id. at ¶ 21.)

The jurisdiction of the Court to address Plaintiffs' claims depends on whether Federal Defendants have undertaken a "major Federal action" with respect to the construction of the LHC. To determine if the Court does have jurisdiction under NEPA, the Court must examine two factors: (1) the amount and nature of Federal Defendants' funding, and (2) the extent of Federal Defendants' involvement and control. Rattlesnake Coal. v. EPA, 509 F.3d 1095, 1101 (9th Cir. 2007); Ka Makani 'O Kohala

18

Ohana Inc. v. Dept. of Water Supply, 295 F.3d 955, 960 (9th Cir. 2002); Sierra Club, 857 F.2d at 1314; Almond Hill School v. United States Department of Agriculture, 768 F.2d 1030, 1039 (9th Cir. 1985); State of Alaska v. Andrus, 591 F.2d 537, 541 (9th Cir. 1979).

No bright-line standard has been articulated by the Courts in determining when federal participation transforms a project into a major federal action within the meaning of NEPA. Almond Hill School, 768 F.2d at 1039 (9th Cir. 1985). Each project must be examined with the relevant criteria in mind.

A.   Federal Funding of the Construction of the LHC

Prior litigation under NEPA has often involved situations where the federal government is engaged in a joint project with a local, state, or private entity. These joint projects often have multiple sources of funding. In these situations, the courts have required a significant level of federal funding in order to meet NEPA's "major Federal action" requirement. Blue Ocean Preservation Society v. Watkins, 754 F. Supp. 1450, 1466 (D. Haw. 1991). Merely examining the total amount of federal funds distributed, however, will not give the correct result. A comparison must be made between the total amount of federal funds distributed and the total cost of the program. Ka Makani, 295 F.3d at 960.

The Courts have declined to find major federal action where federal funding was minimal relative to "the entire

program." <u>Friends of the Earth, Inc. v. Coleman</u>, 518 F.2d 323, 329 (9th Cir. 1975) (no major federal action where federal funding was 10% of the entire project); <u>see also</u>, <u>e.g.</u>, <u>Rattlesnake</u>, 509 F.3d at 1101 (no major federal action where federal funding was 6% of the entire project); <u>Ka Makani</u>, 295 F.3d at 960 (no major federal action where federal funding was 1.6% of the entire project) ("consideration must be given to a great disparity in the expenditures forecast for the [non-federal] and federal portions of the *entire* program." (italics in original) (internal citations and quotations ommitted)); <u>Village of Los Ranchos de Albuquerque v. Barnhart</u>, 906 F.2d 1477, 1482 (10th Cir. 1990) (no major federal action where federal funding was "minuscule in comparison with the cost of the total bridge project"). The Courts have also held that where a project may qualify for future federal funds, the potential to receive federal money at some later date does not qualify a challenged project as a major federal action. <u>Friends of the Earth</u>, 518 F.2d at 328.

According to Dr. Strauss, the Program Manager in the Office of High Energy Physics, Office of Science, for the United States Department of Energy, Federal Defendants contributed a total of $531 million toward the construction of the LHC pursuant to the 1997 Agreement entered into between Federal Defendants and CERN. (Strauss Decl. ¶¶ 14, 21, 22.) This expenditure is represented to be less than 10% of the LHC's

total construction cost of $5.84 billion. (<u>Id.</u> at ¶ 21.) The applicable caselaw indicates that the funding provided by the United States for the construction of the Large Hadron Collider does not constitute a "major Federal action" as defined by the National Environmental Policy Act.

      B.  <u>Federal Funding of the Operation of the LHC</u>

      Dr. Strauss and Dr. Morris Pripstein, the National Science Foundation Program Manager for the Large Hadron Collider, state that the United States will also provide support for the operation and maintenance of the LHC in the future. (Pripstein Decl. ¶ 10.; Strauss Decl. ¶¶ 24, 25.)

      An analysis of the "major Federal action" requirement in NEPA must focus upon federal funds that have already been distributed. Federal funds that have only been budgeted or allocated toward a project cannot be considered because they are not an "irreversible and irretrievable commitment of resources." <u>Friends of the Earth</u>, 518 F.2d at 328 (quotations omitted). The expectation of receiving future federal funds will not transform a local or state project into a federal project. (<u>Id.</u>)

      According to the evidence before the Court, the United States' future involvement in the LHC will include supplying additional federal funding and providing research scientists to CERN. (Pripstein Decl. ¶ 10.; Strauss Decl. ¶ 25.) Federal Defendants' state that the National Science Foundation will provide an additional $87 million for the operation and

21

maintenance of the detectors. (Pripstein Decl. ¶ 10.) In addition, the United States Department of Energy represents that they have budgeted approximately $63 million for fiscal year 2008 and $72 million for fiscal year 2009. (Strauss Decl. ¶ 18 at Attachment 9.)

It is not clear what percentage the proposed federal funding by the United States will represent relative to the total maintenance and operation budget of the LHC. Regardless of the percentage, consideration of the budgeted future federal funds is not ripe for consideration in the "major Federal action" analysis before the Court.

C.   Federal Involvement With and Control Over the LHC

The Court must also examine the extent of Federal Defendants' involvement with and control over the LHC in analyzing if there was a major federal action within the meaning of NEPA. Rattlesnake, 509 F.3d at 1101; Ka Makani, 295 F.3d at 960; Sierra Club, 857 F.2d at 1314; Andrus, 591 F.2d at 541. A low level of federal control would weigh against a finding of major federal action. See Almond Hill, 768 F.2d at 1039 (no major federal action existed because federal officials only served on a technical advisory panel); Andrus, 591 F.2d at 540-541 (no major federal action existed because of an absence of active federal involvement in the state program); Sierra Club v. Babbitt, 65 F.3d 1502, 1513 (9th Cir. 1995) (no major federal

22

action existed because of the federal government's "inability meaningfully to influence" construction of a logging road).

According to the evidence before the Court, the United States has minimal control over the LHC project. The 1997 Agreement provides that the construction, operation, and management of the LHC is the responsibility of CERN, an intergovernmental European agency whose governing council is comprised of 20 European countries. (Strauss Decl. ¶¶ 5, 12.)

The 1997 Agreement, entered into between Federal Defendants and CERN, only gave the United States non-voting "observer" status in CERN's governing council and no role in financial, policy, or management decisions or operation of the LHC. (Id. at ¶¶ 12, 13.)

According to the United States, their contributions toward the construction of the detectors and the accelerator components have now been completed. (Pripstein Decl. ¶ 7; Strauss Decl. ¶ 22.)

It is not enough that Plaintiffs orally contested Federal Defendants' evidence regarding the United States' lack of control over the LHC during the September 2, 2008 hearing. Plaintiffs have not met their burden of production to establish jurisdiction in this action.

D.   Federal Defendants' Funding of an International Project

The issue of federal funding of an international

23

project, such as the LHC, was examined in <u>Friends of the Earth, Inc. v. Mosbacher</u>, 488 F.Supp.2d 889 (N.D.Cal. 2007). In <u>Mosbacher</u>, two United States' government agencies partnered with various international entities in order to finance oil, coal, and gas projects around the world. Plaintiffs brought suit against the two agencies for providing financial support for the energy projects without first conducting the necessary environmental reviews required by NEPA. In determining whether the government agencies' financing could be defined as a "major Federal action" under NEPA, the court in <u>Mosbacher</u> examined the same two factors used when a federal agency partners with a domestic entity: (1) the amount and nature of defendants' funding, and (2) the extent of defendants' involvement and control. <u>Mosbacher</u>, 488 F.Supp.2d at 913-916.

For purposes of analyzing NEPA's "major Federal action" requirement in this case, no policy reason has been suggested for providing a different analysis solely because Federal Defendants contributed funding to an international entity rather than a state or local one.

III. <u>The Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Claims</u>

Upon analysis of the relevant two factors, the Court concludes that Federal Defendants' involvement with the Large Hadron Collider does not qualify as a "major Federal action" within the meaning of the National Environmental Policy Act. 42

U.S.C. § 4332(2)(c). As a result, the Court does not have
jurisdiction to adjudicate Plaintiffs' claims.

Plaintiffs' Opposition and Rebuttal have not provided
any substantive information regarding the subject matter
jurisdiction of this Court. Plaintiffs appear to believe they
invoked federal jurisdiction by simply filing suit in a federal
court. They have not met their burden of establishing that
jurisdiction exists. <u>Scott</u>, 792 F.2d at 927.

IV.  <u>Federal Defendants' Remaining Arguments</u>

Federal Defendants' Motion to Dismiss raised two
additional jurisdictional arguments: standing and mootness.
Federal Defendants argue that Plaintiffs lack standing to bring
suit because they are unable to allege an injury in fact that is
"concrete and particularized" and "not conjectural or
hypothetical." (Motion at 12.) The claim of mootness is based on
the argument that there is no effective relief that the Court
can order. (<u>Id.</u> at 28.) The Federal Defendants' Motion for
Summary Judgment argues that the matter is time-barred by the
statute of limitations set forth in 28 U.S.C. § 2401(a). (<u>Id.</u> at
32.) The Court lacks subject matter jurisdiction over this
action and, therefore, will not address the additional arguments
raised by Defendants.

It is clear that Plaintiffs' action reflects
disagreement among scientists about the possible ramifications
of the operation of the Large Hadron Collider. This extremely

25

complex debate is of concern to more than just the physicists. The United States Congress provided more than $500 million toward the construction of the Large Hadron Collider. But Congress did not enact NEPA for the purpose of allowing this debate to proceed in federal court. "Neither the language nor the history of NEPA suggest that it was intended to give citizens a general opportunity to air their policy objections to proposed federal actions. The political process, and not NEPA, provides the appropriate forum in which to air policy disagreements." <u>Metropolitan Edison Co. v. People Against Nuclear Energy</u>, 460 U.S. 766, 777 (1983).

## <u>CONCLUSION</u>

The Court lacks jurisdiction to adjudicate this action. Defendants' Motion to Dismiss (Doc. 14) is **GRANTED**.

The entire action is DISMISSED.

IT IS SO ORDERED.

Dated: September 26, 2008, Honolulu, Hawaii.



   /s/ Helen Gillmor
Chief United States District Judge

SANCHO, ET AL. v. U.S. DEPARTMENT OF ENERGY, ET AL.; CIVIL NO. 08-00136 HG KSC; **ORDER GRANTING FEDERAL DEFENDANTS' MOTION TO DISMISS**

26